THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* PAUL THOMPSON *et al.*, Defendants-Appellees.

Fourth District   No. 15900

Opinion filed September 15, 1980.

William J. Scott, Attorney General, of Springfield (Michael Paschon and Steven J. Teplinsky, Assistant Attorneys General, of counsel), for the People.

Tim J. Bonansinga, of Springfield, and Steven J. Rosenberg, of Chicago (Thomas Connors, of counsel), for appellees.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

Can a State revenue auditor settle a tax liability of a taxpayer and thereby preclude subsequent criminal prosecution?

No.

We reverse and remand.

The State appeals the trial court's dismissal of indictments handed down against defendants Paul Thompson and Target Petroleum, Inc. The indictments charged 11 counts of knowingly making a false motor fuel tax return (Ill. Rev. Stat. 1979, ch. 120, par. 431(5)), and 8 counts of knowingly filing a fraudulent retailers' occupational tax return (Ill. Rev. Stat. 1979, ch. 120, par. 452). The trial court dismissed the indictments following a hearing at which Paul Thompson was the only witness to testify.

The scenario giving rise to this action begins on or about September 20, 1977, when Paul Thompson, an officer of Target Petroleum, allegedly began filing false motor fuel and retailers' occupational tax returns. At some later date, which is not clear from the record, amended tax returns were filed indicating a tax deficiency in favor of the State. Paul Thompson then engaged in conversations with one Cloyd Hunt, an auditor for the Illinois Department of Revenue. While the legal effect of these conversations is the center of this dispute, the only evidence presented at the hearing on the motion to dismiss reflected that Thompson and Hunt

discussed Thompson's tax liability. Hunt purportedly told Thompson that if he would reach an agreement to pay the taxes that were owing, it would "solve all the tax problems." Thompson stated that based upon Hunt's statements, he believed that all he had to do was make payments pursuant to the agreement to end the matter. He could not specifically recall discussions concerning criminal charges.

The discussions culminated in November of 1978 with the signing of two "taxpayer's payment proposals" by Paul Thompson and representatives of the Illinois Department of Revenue. Pursuant to the agreement, Thompson—as president of Target Petroleum—agreed to pay $206,309.96 in taxes.

The trial court found that by entering into the agreements and paying the entire tax liability, Thompson thought he was foreclosing any potential criminal prosecution. The court also found that during March of 1979, the Illinois Attorney General's office caused the indictments to be returned and that defendants had paid the amounts due under the agreements. Finally, the court concluded that the substantial satisfaction of the agreements operates as a full and complete bar to any criminal procedure. The trial court thus dismissed the indictments with prejudice.

The State now appeals, arguing that the agreements did not bar prosecution and, in any event, the trial court's conclusion was against the manifest weight of the evidence. The defendants apparently present an alternative ground for affirming, arguing that the prosecution violated rights to due process of law.

We hold that the auditor employed by the Illinois Department of Revenue did not have the authority to bind the State's Attorney and that defendants' due process rights have not been violated.

■■ The State's Attorney is a constitutional officer. (Ill. Const. 1970, art. VI, §19.) His office is part of the executive branch of State government and the powers exercised by that office are executive powers. (*People v. Stinger* (1974), 22 Ill. App. 3d 371, 317 N.E.2d 340.) The statute says:

"5. The duty of each State's attorney shall be:

(1) To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned.

(2) *To prosecute* all forfeited bonds and recognizances, and *all actions and proceedings for the recovery of debts, revenues, moneys, fines, penalties and forfeitures accruing to the State* or his county, or to any school district or road district in his county; also, to prosecute all suits in his county against railroad or transportation companies, which may be prosecuted in the name of the People of the State of Illinois." (Emphasis ours.) Ill. Rev. Stat. 1979, ch. 14, par. 5(1), (2).

Defendants initially cite the case of *People v. Friedman* (1980), 79 Ill.

2d 341, 403 N.E.2d 229. There, the defendant was convicted of 10 counts of theft by deception and one count of conspiracy to commit theft by deception. The appellate court reversed, holding that defendant had been denied the right to counsel of his choice. The supreme court disagreed, stating that it was proper for the trial court to deny a motion for continuance made on the morning of trial.

As an alternative basis on which to affirm the appellate court's reversal, the defendant in *Friedman* asserted that evidence of a plea negotiation had been improperly admitted. At trial, an investigator for the Illinois Attorney General's Office was called as a witness by the State and testified that he received a message at his office informing him that defendant had attempted to telephone him concerning a "very urgent" matter. Upon returning the call, the investigator stated that defendant asked about "making a deal," claiming a preference for a Federal prison as opposed to a State institution. (Defendant was also under Federal indictments for the same acts.) The supreme court framed the issue as whether defendant's unsolicited statements to an investigator of the Attorney General's office is a plea-related discussion and therefore inadmissible. In deciding this question, the court stated that the standard to be applied is whether the defendant had a reasonable subjective expectation that the discussion was plea-related.

The court in *Friedman* found sufficient indicia of plea negotiation and noted that the fact that the party to whom this statement was made did not have the actual authority to enter into negotiation is not, standing by itself, sufficient to render the statement admissible.

Defendants further cite the case of *People v. Hill* (1980), 78 Ill. 2d 465, 401 N.E.2d 517. There, the defendant was found guilty of two counts of murder and one count of conspiracy to commit murder and received the death penalty. At trial, an Assistant State's Attorney testified that when he confronted the defendant with a taped statement of an alleged accomplice, defendant admitted commission of one of the murders and offered to plead guilty to both for an agreed sentence of 14 years. Prior to the defendant's statements, the assistant had told the defendant that any deal would have to be approved by the State's Attorney.

On appeal, the defendant in *Hill* argued that the evidence should not have been admitted since it was related to plea negotiations. The State argued that since the offer was made to an Assistant State's Attorney without the authority to settle, the evidence did not constitute an offer to enter a plea of guilty. The supreme court, on review, accepted the defendant's argument noting that the defendant would have believed he was negotiating.

Relying upon *Hill* and *Friedman*, defendants posit that the question is not whether Hunt had actual authority to compromise the criminal proceeding but whether defendants actually subjectively believed Hunt had such power. We disagree. The narrow issues addressed by the court

in both *Hill* and *Friedman* concern the admissibility of statements made during plea negotiations. In contrast, the question we are faced with is whether the agreement precludes prosecution. Defendants' reliance upon apparent authority would only go to the question of admissibility of statements made in the process of negotiation.

The parties have not cited, nor have we found, any case in this jurisdiction determining whether a State employee acting in his official capacity, other than the State's Attorney, can validly enter into an agreement compromising a criminal action.

In *United States v. Long* (7th Cir. 1975), 511 F.2d 878, *cert. denied* (1975), 423 U.S. 895, 46 L. Ed. 2d 128, 96 S. Ct. 196, the district court dismissed an indictment charging the defendant with various firearms violations. The court found that the defendant had been arrested on narcotic and firearms charges by agents of the Illinois Bureau of Investigation (IBI). Pursuant to an agreement whereby the IBI agents promised the defendant that no State or Federal firearms charges would be filed and he would receive probation on the narcotics charges, the defendant supplied requested information. A Federal grand jury subsequently handed down an indictment which the court dismissed as violating "fundamental fairness." The Seventh Circuit reversed, holding that in the absence of an established agency relationship between the Federal government and the IBI agents, the agents had no authority to make binding promises relating to the Federal prosecution.

Additionally, in two cases arising out of a riot and attempted escape from a Washington, D. C., jail in 1972, the United States Court of Appeals for the District of Columbia held that the D.C. Commissioner of Corrections was without authority to agree not to prosecute jail inmates for crimes arising out of a jailbreak attempt. *United States v. Gorham* (D.C. Cir. 1975), 523 F.2d 1088; *United States v. Bridgeman* (D.C. Cir. 1975), 523 F.2d 1099, *cert. denied* (1976), 425 U.S. 961, 48 L. Ed. 2d 206, 96 S. Ct. 1744.

■■■ The policy behind these holdings is clear. The decision of whether or not to prosecute is traditionally placed in the discretion of the prosecuting attorney. The sanctity of prosecutorial discretion should not be cavalierly discarded. Clearly, an auditor with the Illinois Department of Revenue is without authority to determine prosecution for criminal conduct.

Defendants also argue that due process of law precludes a criminal prosecution of a defendant for tax violations after the defendant, in reliance on a State revenue agent's representation that doing so will "solve all the tax problems" of the defendant, executes and complies with an agreement providing for prompt payment of the entire principal amount of tax due. The defendants note that the trial court has the inherent authority to dismiss an indictment for a denial of due process. *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244.

■ But in *Lawson*, the court was concerned with pre-indictment delays and held that a dismissal was proper when a defendant could show "actual and substantial prejudice." Additionally, the denial of due process must be "unequivocally clear." Neither of these standards has been met by defendant here.

While it is true that defendants paid over $206,000 in taxes pursuant to the agreement, this money was admittedly owed as defendants conceded in the amended tax returns. None of the money paid represented either interest or penalties. Presumably, defendants would be charged with these sums of money following a successful criminal prosecution.

In addition, Thompson could not specifically recall the discussions concerning criminal charges. In fact, Thompson could not state that Auditor Hunt ever mentioned anything about criminal charges. The testimony at the hearing merely indicates that Thompson's conclusion—that the agreement would bar criminal prosecution—was based upon his own assumptions and inferences from the discussions and not upon any particular statements which were made by Hunt.

The order of the court dismissing defendants' indictments with prejudice is therefore reversed, and the cause is remanded to the trial court for further proceedings.

Reversed and remanded.

CRAVEN and GREEN, JJ., concur.