580 A.2d 804

COMMONWEALTH of Pennsylvania

v.

Curtis CROSLAND, a/k/a Curtis Croslend, James Turner, Appellant.

Superior Court of Pennsylvania.

Argued June 20, 1990.

Filed Sept. 20, 1990.

Benjamin Paul, Philadelphia, for appellant.

Alan Sacks, Asst. Dist. Atty., Philadelphia, for Com.

Before ROWLEY, McEWEN and JOHNSON, JJ.

McEWEN, Judge:

We here consider an appeal from the judgment of sentence to a term of life imprisonment,[1] imposed after a jury found appellant guilty of murder in the second degree, robbery, and possession of an instrument of crime. Since we find that the Commonwealth's use of the prior inculpatory testimony of a witness who was unavailable at trial due to the exercise of his Fifth Amendment privilege, under the circumstances of this case, violated the appellant's rights

---

1. The distinguished Judge William J. Manfredi sentenced appellant to serve a term of life imprisonment for murder, and to serve concurrent terms of from ten years to twenty years for robbery, and from two and one-half years to five years for possession of an instrument of crime.

under Article 1, Section 9 of the Pennsylvania Constitution, as well as those guaranteed by the Sixth Amendment of the U.S. Constitution, we vacate the judgment of sentence and remand for a new trial.

Appellant was arrested on December 10, 1987, and charged with the January 5, 1984 murder of Mr. Ill Man Heo, who had been shot during the course of a grocery store robbery in South Philadelphia. Witnesses to the crime who had been present at the scene of the murder were able to give only general descriptions of the assailant as a short black man, approximately 5'-5" tall.

More than three years after the crime, in March of 1987, Rodney Everett, who was the paramour of appellant's sister, told his parole officer that appellant had, a few weeks after the robbery, told him that he had shot Mr. Heo while attempting to rob the store. Everett provided this information to his parole officer in an apparent attempt to obtain favorable treatment for a parole violation.

Appellant was subsequently arrested and charged with murder, and Everett testified against him at the preliminary hearing. At trial, the prosecutor, in his opening statement to the jury, explained Everett's testimony as follows:

You will hear that the defendant's sister had a child by the name—by a man by the name of Rodney Everett. This defendant was that child's uncle. You will hear that this defendant knew Rodney Everett and had spoken with him and was friendly with Rodney Everett. And you will hear that Rodney Everett was a man convicted of robbery and was on parole for robbery at the time this murder occurred.

You will hear that the defendant told Rodney Everett everything that happened in connection with the murder at the grocery store. You will hear how the defendant bragged and ran down in detail to Rodney Everett exactly what happened in that grocery store, assuming of course that he could trust somebody who was the father of his nephew.

But you will hear how when Rodney Everett got in problems with his parole that the first thing he did was tell the police everything he knew about the defendant and the defendant's involvement in the murder. And you will hear how the police got the information about the murder and corroborated everything that Rodney Everett had told them.

You will hear from Rodney Everett about the confession by this defendant to him about the murder. You will hear testimony corroborating the fact that this defendant was the one who committed the murder.

Dec. 12, 1988, N.T. 18–19.

Everett, however, did not testify at trial due to the invocation of his Fifth Amendment privilege against self-incrimination. While the record is silent as to the basis for the invocation of the privilege, the trial court explained in its opinion that counsel for Everett "advised counsel and the court in chambers that the reason for the invocation was based upon possible problems resulting from variations between his prior statements and any testimony he might be compelled to make at trial. Upon motion of the prosecutor, Everett was then declared unavailable and the Commonwealth was permitted to present his preliminary hearing testimony to the jury."

Defense counsel objected to the introduction of the testimony and repeatedly requested that the court inform the jury that the basis for the invocation of the privilege by Everett was his belief that his testimony at trial would subject him to prosecution for perjury based on his testimony at the preliminary hearing. This request, as well as a request for an instruction to the jury concerning the reason for Everett's unavailability, were opposed by the Commonwealth and denied by the trial court.

■ The Commonwealth contends that appellant has waived his right to such relief as he might otherwise have been entitled to claim, because he "failed to meet his burden of establishing that the [preliminary] hearing testimony was

false" ... and "did not request the court to conduct a hearing to determine whether Everett's counsel had a proper basis for invoking [her] client's privilege". We find the Commonwealth's argument concerning waiver to be meritless. Appellant was not the party seeking to introduce the testimony to be supplied by Everett. "It should be self-evident that the party against whom the evidence is sought to be offered should not be expected to support its introduction." *Commonwealth v. McGrogan*, 523 Pa. 614, 619, 568 A.2d 924, 926–927 (1990).

 Appellant contends that the Commonwealth's use of Everett's preliminary hearing testimony, in light of his subsequent invocation of the privilege against self-incrimination based upon fear of perjury charges, denied appellant the right to confront and cross-examine his accuser, in violation of the Sixth Amendment to the United States Constitution and Article 1, Sec. 9 of the Pennsylvania Constitution. Appellant also argues that the concealment from the jury of the basis for Everett's unavailability, in light of the introduction of his prior testimony, offends due process guarantees.

"The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to cross-examine." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). While the rights provided by the Confrontation Clause are fundamental rights, guaranteed by both the federal and state constitutions, they are not absolute and " 'must occasionally give way to considerations of public policy and the necessities of the case' ". *Commonwealth v. Kravontka*, 384 Pa.Super. 346, 351, 558 A.2d 865, 868 (1989), *quoting Mattox v. U.S.*, 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895). The balancing of the competing interests of the state and the accused has resulted in the formulation of recognized exceptions to the prohibition against the admission of hearsay evidence.

The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in

conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.

The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule." *Snyder v. Massachusetts*, 291 US, [97] at 107, 78 L.Ed. 674, 54 S.Ct. 330 [333], 90 ALR 575. The principle recently was formulated in *Mancusi v. Stubbs* [408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) ]:

> "The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra*, [400 U.S. 74] at 89, [91 S.Ct. 210, 220, 27 L.Ed.2d 213] and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra* [399 U.S. 149] at 161, [90 S.Ct. 1930, 1936, 26 L.Ed.2d 489]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable *his prior testimony must bear some of these 'indicia of reliability.'* "

408 U.S. at 213, 33 LEd2d 293, 92 S.Ct. at 2308.

\* \* \* \* \* \*

In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate

"indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2534, 65 L.Ed.2d 597 (1980) (emphasis supplied) (citations and footnotes omitted throughout).

Appellant recognizes that the courts have consistently failed to view as a violation of the Confrontation Clause the introduction of the prior testimony of an unavailable witness against an accused, and, therefore, argues that where the unavailability of the witness is based solely upon his repudiation of the testimony sought to be admitted, the usual reasons for finding "sufficient indicia of reliability" no longer exist.

We agree with appellant that where prior testimony of a witness, whose unavailability is predicated solely upon fear of a perjury prosecution, is introduced against a defendant pursuant to 42 Pa.C.S. § 5917, due process requires something more than was accorded appellant in the instant case. The trial court was of a similar mind but believed itself constrained by prior rulings of this Court and the Pennsylvania Supreme Court. While our research has not revealed any Pennsylvania cases directly on point, the precise issue here presented was the subject of the appeal in *People v. Garner*, 207 Cal.App.3d 1586A, 207 Cal.App.3d 935, 255 Cal.Rptr. 257 (1989). Justice Donald N. Gates, writing for the California Court of Appeals, there outlined two alternative methods of insuring that the finder of fact will have *all* relevant evidence before it:

The prosecution's entire case in chief consisted solely of (1) an autopsy report indicating that a Phillip Matthews had died "as a consequence of multiple gunshot wounds," and (2) a reading into the record of the testimony given by the one and only witness produced at appellant's preliminary examination, i.e., Alonso Phillips. This latter procedure, which constituted the only evidence connecting

appellant to the crime, was permitted because the witness, having subsequently advised the prosecution his identification of appellant at that hearing had been a lie, refused to testify at trial asserting that to do so would permit the prosecution to charge and convict him of having committed perjury!

\* \* \* \* \* \*

In the case before us, of course, appellant was completely precluded from questioning his sole accuser concerning a primary issue, i.e., the witness's admission of false swearing, since such admission had occurred only after appellant's preliminary examination had been completed. As a consequence, as to the most basic question in controversy, appellant was denied both his constitutional right to confront his accuser and to conduct a meaningful cross-examination. These deprivations ... effectively precluded the jury from determining when, if ever, the one witness against him was speaking truthfully.

When the People wish to go forward in reliance upon the testimony of a recanting witness, fundamental fairness would require, at a minimum, that the jury (1) be advised precisely why the witness is being allowed to refuse to testify, i.e., an alleged fear of a perjury prosecution, and (2) be instructed that they should draw all reasonable and appropriate inferences therefrom concerning the witness's credibility and the guilt or innocence of the accused.

In fact, in instances such as the present, we believe the truly preferable approach, as appellant urges, would have been for the trial court to condition the People's request to introduce Phillips' allegedly perjured testimony upon its granting him immunity from prosecution. Respondent has suggested no reason why this procedure would have been prejudicial to it and we can conceive of none.

Obviously, the People could not, in good conscience, have urged that the very testimony on which they asked to have appellant imprisoned for the balance of his life, was so untrustworthy that they wished to retain the right to

prosecute their declarant for perjury. They already knew, of course, that Phillips claimed to have testified falsely. Under such circumstances one might have hoped the prosecution would have been as desirous as the defense to see the truth prevail, whatever that might be. Further, of course, a grant of immunity for past perjury would not have precluded the District Attorney from proceeding against Phillips if it deemed his trial testimony to be untrue.

In this fashion, the prosecution could have gone forward despite Phillips' avowed change of heart and yet accorded appellant those rights guaranteed him by both state and federal constitutions.... That is to say, the arbiters of appellant's guilt or innocence would actually have observed the confrontation between accuser and accused and heard each of Phillips' conflicting tales fully and fairly tested by each parties' cross-examination, before they were called upon to determine which version to credit.

\* \* \* \* \* \*

Lest there be any confusion concerning the extremely limited nature of the remedy we here recommend, we emphasize that a need therefore will arise if, and only if, (1) the witness's invocation of the privilege is based upon a claimed fear of a perjury prosecution, and (2) it is the People who wish to use this witness' earlier, and assertedly false, testimony as evidence against the accused. While the District Attorney may not be required to seek a grant of immunity even in such an instance, his request to make affirmative use of that testimony may be conditioned upon his willingness to expose the witness to full and complete cross-examination before the triers of fact.

*People v. Garner, supra* 255 Cal.Rptr. at 258–61.

It must be emphasized that the factual scenario which triggers the claim of violation of the confrontation clause must be carefully scrutinized since the method of remedy will vary with the nature of the asserted infringement. So certain a caveat is issued because such claims as we address

may be expected to occur with some frequency since, in the current age, the oath which has for centuries been the *sine qua non* of our systems of justice, has become a meaningless procedure to those who live by predatory instinct.[2] And, of course, such claims can be expected to assume various forms since the advocacy system which has so distinguished our justice systems flourishes upon the innovative challenges presented by counsel for the accused.

In near example, our esteemed colleague, Judge Joseph A. Del Sole, writing for this Court in *Commonwealth v. Hook*, 364 Pa.Super. 447, 528 A.2d 241 (1987), held that where "a witness [gives] sworn testimony, subject to cross-examination by the defendant, and when called upon to testify at a subsequent trial, claim[s] to be unable to recall the former testimony ... [the witness] must be called upon to testify as to the extent of his or her present memory ... and be available for cross-examination by the defendant. This preserves a defendant's Sixth Amendment right to confront witnesses against him. In a case such as we have before us, a witness has, in effect, provided two different versions of her observation of the events in question: the earlier version was incriminatory; the second was vague. *The jury must be allowed to hear both versions, weigh the conflicting evidence and reach its verdict accordingly.*" *Id.*, 364 Pa.Superior Ct. at 451, 528 A.2d at 242–243 (emphasis supplied) (footnote omitted).

When a New York prosecutor refused to grant immunity to a prosecution witness who (1) had implicated the accused in direct testimony for the prosecution, (2) then expressed the wish to recant that inculpatory testimony, and (3) subsequently indicated that he would invoke his Fifth Amend-

**2.** The role of the informer has historically been served in secret. The more recent practice of agents and prosecutors has been to move the informer from the shadows of anonymity to the spotlight of trial, in a lead role as an accusatory witness and, frequently enough, into testimony that the accused "confessed" in his presence. Such assistance to the prosecution is usually triggered by the promise of leniency, as well as other blandishments. The risk of recantation by such witnesses becomes then part of the price the prosecutor must pay for proceeding to so ephemeral, and thereby perilous, an alliance.

ment rights when called by the defense, the New York Supreme Court, Appellate Division, in *People v. Priester*, 98 A.D.2d 820, 470 N.Y.S.2d 478 (1983), ruled that the refusal of the prosecutor to grant immunity to the witness was an abuse of discretion, declaring:

> The grant of immunity is usually with the discretion of the District Attorney and any review by the court is on a restricted basis. However, in some instances, it has been held to be an abuse of authority where the exercise of such discretion affects defendant's due process rights to a fair trial and to vital exculpatory testimony. Here, the District Attorney's denial of immunity had the effect of binding this witness to her previous testimony which she contended was not accurate. The grant of immunity here was obviously sought to protect [the witness] from perjury charges if she changed her testimony. There is nothing to indicate that she was seeking to avoid prosecution for past crimes. This fact, coupled with the importance of her testimony bearing as it did on defendant's intent, required that immunity be granted.... The denial thereof requires that a new trial be granted conditioned on the grant of immunity to this witness.

*People v. Priester, supra* at 822, 470 N.Y.S.2d at 480.

Further pertinent to our discussion of this vexing issue is, perhaps, the concurring statement of Michigan Supreme Court Justice Charles L. Levin, in *People v. Dyer*, 425 Mich. 572, 390 N.W.2d 645 (1986), not only by reason of his succinct expression upon the question we here review, but as well because of his cautious concern that the imbalance between the right of the prosecutor and the right of the accused to secure immunity for a witness who has invoked his testimonial privilege might well implicate constitutional rights beyond the confrontation clause:

> When a witness called by the people invokes his Fifth Amendment privilege, the prosecutor can obtain the witness' testimony by providing him with immunity from prosecution.

A defendant cannot confer immunity on and thereby obtain the testimony of a witness he wishes to call who has invoked his Fifth Amendment privilege. The prosecutor and the defendant are thus not in the same position when a witness invokes his Fifth Amendment privilege. Nevertheless, I agree with the opinion of the Court that this imbalance does not justify the defendant any more so than the people in calling a witness whom he knows will claim a valid privilege not to testify for the purpose of impressing upon the jury the fact of the claim of privilege. No inference may properly be drawn from the claim of privilege, and thus on principle neither side may seek to place this non-evidence before the jury.

A defendant may, however, have the right to obtain the testimony of the witness who invoked the privilege, just as the prosecutor might by granting immunity. To deny the defendant the testimony of the witness might be violative of the Due Process Clause, the Confrontation clause, or of other constitutional and statutory rights. The question whether a defendant has a right in a particular case to witness immunity has evoked a sharp division of opinion and much critical comment.

*People v. Dyer, supra* at 584–85, 390 N.W.2d at 651 (footnote omitted).

The trial court, in the instant case, believing that it had no recourse but to permit the Commonwealth to use the allegedly perjurious testimony and conceal the basis for the invocation of the privilege from the jury, insightfully observed that:

Where as here, a verdict rests on testimony which is admitted to be inaccurate, any court must have cause to be troubled. Were we sitting as a court with broad policy making jurisdiction, we would provide for the trial courts to have the power to *sua sponte* grant use immunity and compel testimony where the basis of the privilege is the avoidance of the potential consequences of *prior* false testimony or statements which are to become evidence

upon which a conviction is to be obtained. (emphasis in original)

Our legislature, however, has conferred upon the courts the authority to grant use immunity *only* upon application of the prosecutor. *Commonwealth v. Johnson,* 507 Pa. 27, 487 A.2d 1320 (1985). Thus, however sage the suggestions of the trial court, we are precluded from ordering the prosecutor to grant the witness use immunity.

█ In any event, since the precise issue, as well as the facts, presented in the California decision of *People v. Garner, supra,* mirror the instant case, and since the insightful analysis and careful expression of that decision so nearly achieves the precious balance between the right of society to a verdict and the right of the accused to a fundamentally fair trial, we accept and rely upon that rationale for our determination. Thus, we rule (1) that appellant be granted a new trial, and (2) that, in the event that Rodney Everett again invokes his privilege against self incrimination and the prosecution proceeds to the presentation of his earlier testimony, the prosecution should confer upon him immunity from prosecution for that earlier assertedly perjured testimony, or if the prosecutor, in the exercise of his discretion, declines to grant the witness immunity pursuant to 42 Pa.C.S. § 5947(a), (b), (c), and (d), the court must advise the jury that Rodney Everett refuses to testify by reason of his fear that the earlier testimony will subject him to prosecution for perjury.

Judgment of sentence reversed. Case remanded for proceedings consistent herewith. Jurisdiction relinquished.