Garland M. GREEN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4246.

Court of Appeals of Alaska.

Aug. 6, 1993.

Randall Cavanaugh, Anchorage, for appellant.

Eric A. Johnson, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Garland M. Green was convicted of first-degree burglary, AS 11.46.300(a)(1), and third-degree theft, AS 11.46.140(a)(1), following a jury trial in the Anchorage superior court. Green appeals his convictions, asserting that the State had no authority to prosecute him for burglary and theft because the police who arrested and interrogated him promised him immunity from prosecution if he cooperated by returning the property he had stolen. Green also appeals his sentence. We affirm.

In the early morning of October 2, 1990, Michael Reed was working the night shift for Offshore Systems in Unalaska. At approximately 3:00 a.m., Reed saw someone inside the supervisor's trailer; knowing that his supervisor was generally asleep at that hour, Reed approached the trailer to investigate. As Reed neared the trailer, he saw a man climb out of the window. Reed asked the man, "Who the hell are you?" The man held up a wallet and answered, "I'm a friend of yours." When Reed responded, "You're no friend of mine," the man shoved Reed aside and ran away.

Reed woke his supervisor, Robert Nufer. Nufer searched the trailer and discovered that his wallet and $40 cash were missing. He then called the Unalaska police. Officer John Nichols interviewed Nufer and Reed. Reed gave Nichols a physical description of the burglar; he told Nichols that he recognized the burglar but did not know his name.

Later that morning, Nufer called the Unalaska police and told them that he had discovered that the burglary had been committed by Green, who was an Offshore Systems employee living in room 28 of the company bunkhouse. Officer Meta Parker went to room 28 and confronted Green, who denied being involved in the burglary. Officer Parker left to get Nufer and Reed; when she returned with the two men, Reed identified Green as the man he had seen climbing out of the trailer. Parker arrested Green and took him to the Unalaska Department of Public Safety.

Officers Nichols and Parker interviewed Green. Green initially denied committing the burglary and theft, but he soon confessed. Green told the officers that he had hidden Nufer's wallet in the men's restroom at the Offshore Systems bunkhouse and that he had put the $40 in his own wallet, which was hidden under his mattress.

Nichols had attempted to tape record the interview with Green, but when the interview was over he discovered that the tape recorder had malfunctioned. When Nichols found that there was no tape of the interview, he decided to ask Green to fill out a "voluntary statement" form. Green sat in his cell and reiterated his confession in writing on the form. In stark contrast to the fact that Green had been arrested and had been interrogated about the burglary, the "voluntary statement" form begins with the following language:

### VOLUNTARY STATEMENT
### (NOT UNDER ARREST)

I, (Garland Green), am not under arrest for, nor am I being detained for any criminal offenses concerning the events I am about to make known to (the Unalaska police). Without being accused of or questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will, for whatever purposes it may serve.

Green also gave Nichols permission to search his room at the bunkhouse. Nichols found the wallet and the money where Green had said they would be.

On April 11, 1991, a grand jury indicted Green for burglary and theft. Green asked the superior court to dismiss the indictment with prejudice, claiming that the Unalaska police had promised him immunity from prosecution if he cooperated with them by returning the stolen articles.

At the hearing on Green's motion to dismiss, Green testified that he had told the officers that he had a ticket for a flight out of Unalaska at 2 o'clock that afternoon. According to Green, Officer Nichols replied, "Mr. Green, this is not a very serious crime. Just tell us where the wallet is, and you can catch your flight." Green testified that he interpreted Nichols's comment as a promise that he would not be prosecuted if he returned the wallet and the money. Green stated that, when he read the wording of the "voluntary statement" form, this confirmed to him that he would not be detained or charged if he returned the stolen property.

Officer Nichols took the stand and denied making the statements Green attributed to him. Nichols declared that the only promise he had made to Green was that, if Green cooperated with the police, this cooperation would be made known to the district attorney, but with no guarantee that this would affect the charges against Green.

Superior Court Judge *pro tem* Michael Wolverton ruled that Green's confession at the Unalaska police station had to be suppressed under *Stephan v. State*, 711 P.2d 1156 (Alaska 1985); Judge Wolverton found that, under all the circumstances, the officers' failure to tape record the interview was not excusable. The judge also suppressed the recovered wallet and money because they were fruits of the unlawful interrogation.

However, because the State could still prove its case through the testimony of Reed and Nufer, the question remained whether the indictment should be dismissed. Judge Wolverton denied Green's motion to dismiss the indictment. The

judge found that Officer Nichols might have unwittingly said things to Green that caused Green to think he would not be prosecuted if he returned the wallet and the money, but the judge also found that Nichols had not knowingly offered immunity to Green. Therefore, Judge Wolverton concluded, there had been no "meeting of the minds"—no contract.

Green challenges Judge Wolverton's ruling. He relies on the principle of contract law that the existence and scope of a contract must be proved by the objective manifestations of the parties, and that a party's self-serving declarations about the party's subjective intention, made after litigation commences, will not be allowed to prove, disprove, or vary the terms of a contract. *See*, for example, *Peterson v. Wirum*, 625 P.2d 866, 870 (Alaska 1981). Green argues that Nichols's statements to him during interrogation and the wording of the "voluntary statement" form that Nichols asked Green to sign later are objective proof that Nichols offered Green immunity, and that Nichols cannot defeat this conclusion by testifying that this was not what he subjectively intended.

■ We conclude, however, that the existence or non-existence of a contract between Green and the Unalaska police is a moot issue. Even if the Unalaska police promised immunity to Green, this promise would not be enforceable against the State of Alaska.

While "a prosecutor's promise of immunity made in return for a surrender of the privilege against self-incrimination is binding on the prosecution", *Surina v. Buckalew*, 629 P.2d 969, 975 (Alaska 1981), the effect of a police officer's promise of immunity has not been decided in Alaska. This issue was mentioned in passing by the supreme court in *Closson v. State*, 812 P.2d 966, 971 n. 6 (Alaska 1991), but the court found it unnecessary to resolve the issue because the police promises in *Closson* had been contemporaneously ratified by an assistant district attorney.

Turning to decisions from other jurisdictions, the clear rule is that the police have no authority to promise immunity to a crim-

inal defendant. For example, in *People v. Gallego*, 430 Mich. 443, 424 N.W.2d 470 (1988), *affirming* 143 Mich.App. 639, 372 N.W.2d 640 (1985), state police officers promised the defendant immunity from prosecution if he returned $33,000 that had been used by the officers to make an undercover purchase of drugs. Gallego told the officers where to find the money, but several months later he was nevertheless charged with sale of cocaine. 424 N.W.2d at 471.

Gallego sought dismissal of the charge, claiming that he had a right to specific performance of the officers' promise. The Michigan Supreme Court disagreed:

> We base our decision to deny defendant specific performance on the fact that the police lacked the authority to make a binding promise of immunity or not to prosecute. The case at bar involves a non-plea agreement for which specific performance amounts to preclusion of an otherwise valid prosecution, and the Court has available an alternative remedy short of specific performance, i.e., suppression, which essentially restores defendant to the position he enjoyed prior to making the agreement in question with the police.

> The absence of authority of the police in this matter is significant for several reasons.... Since the police possess neither the authority to withhold prosecution nor to grant immunity, no formal system exists by which to check the potentially unbridled discretion the police would possess if allowed to make binding promises precluding prosecution. The potential for abuse seems obvious.

> .    .    .    .    .

> In addition, enforcing the unauthorized promise made by the police to defendant raises the question of the logical limits of the power of the police to control the criminal justice system. If the police may make unauthorized, yet binding promises that preclude prosecution, why could they also not make binding plea bargains or sentence agreements? Thus, in granting defendant specific perfor-

mance, this Court would create a dangerous precedent. . . .

[D]ismissal of criminal charges as a remedy for alleged police misconduct is a drastic and disfavored remedy. See, e.g., *United States v. Blue,* [384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966)]; *United States v. Rogers,* 751 F.2d 1074, 1076–1077 [(9th Cir.1985)]. In this case, dismissal of criminal charges is even less desirable ... because it advances no other legitimate interests. . . .

[A]n alternative remedy [exists] which essentially restores defendant to the position he enjoyed prior to making the agreement in question with the police. . . . Moreover, we are not required, as a result of the "constable's blunder," to place defendant in a better position than he enjoyed prior to making the agreement with the police.

*People v. Gallego,* 424 N.W.2d at 473–76 (footnotes omitted).

The Michigan Supreme Court's ruling is echoed in other decisions from around the country. In *Winkles v. State,* 40 Md.App. 616, 392 A.2d 1173 (1978), the Maryland Court of Special Appeals said:

[The defendant asserts that a police officer promised him] that these charges would not be prosecuted[.] ... That promise could *only* be made by the State's Attorney. The discretion as to whether to prosecute is solely in the State's Attorney, and only that official (or his authorized assistants, in his name) could validly exercise that discretion[.] ... [A] police officer has neither the power himself to make such a promise, nor to bind the State's Attorney to it. To conclude otherwise would not only risk the serious possibility of corruption, abuse, and substantial mischief and uncertainty in the prosecution of criminal cases, but would infringe upon the discretion constitutionally committed to the State's Attorney.

*Winkles,* 392 A.2d at 1175–76.

In *Yarber v. State,* 368 So.2d 868 (Ala. Crim.App.1978), *cert. denied,* 368 So.2d 871 (Ala.1978), the court stated:

[L]aw enforcement officers are without question totally lacking in power to authorize or grant immunity from arrest or prosecution to one criminally culpable under the laws of this state. Any right of an accused not to be prosecuted because of such a promise of immunity is equitable only. Breach of such a promise cannot be pled in bar of an indictment, as grounds for dismissal of the prosecution, or as grounds for reversal on appeal.

*Yarber,* 368 So.2d at 869–870. *See also Yarber v. State,* 375 So.2d 1212, 1227 (Ala. Crim.App.1977) ("Under the settled law of this state[,] law enforcement officers are utterly without power and authority to grant an accused immunity from arrest and prosecution for violating our criminal laws. To clothe them with such power and authority would strike at the very heart of our system of criminal justice and oust the courts of the powers invested in them by the Constitution and statutes."), *rev'd on other grounds,* 375 So.2d 1229 (Ala.1978); *Application of Parham,* 6 Ariz.App. 191, 193, 431 P.2d 86, 88 (1967) ("We address ourselves first to the question of whether the petitioner is entitled to the relief he seeks—specific performance of his 'bargain' with the law enforcement officers that if he would help in a criminal investigation, all charges, including the one for which he was sentenced, would be dropped. We hold that such promises, if made by police officers[,] are unenforceable, as being beyond the scope of authority of such officers."); *People v. Thompson,* 88 Ill. App.3d 375, 43 Ill.Dec. 600, 410 N.E.2d 600 (1980) (holding that, despite an apparent promise made by an auditor from the state department of revenue, the state's attorney could prosecute the defendant for tax offenses); *State v. Crow,* 367 S.W.2d 601, 605–06 (Mo.1963) ("[I]t seems quite clear that the sheriff has no standing to grant or offer immunity as a bar to a prosecution. 15 Am.Jur., Criminal Law, § 322, p. 19, in discussing who may grant immunity states: 'Nor can police officers or a sheriff grant immunity from prosecution to one of two or more persons accused of a crime on condition of confession and readiness to

become a witness against the others accused, at least where the promise is made without authority of the prosecuting attorney[,] and such a promise cannot be pleaded in bar of an indictment for the crime.' "); *State v. Cox*, 162 W.Va. 915, 253 S.E.2d 517, 521 (1979) ("Every court addressing this issue has held that law enforcement officers do not have authority to promise that in exchange for information, a defendant will not be prosecuted for the commission of a crime[,] and such a promise is unenforceable as being beyond the scope of their authority.... We hold ... that law enforcement officers do not have authority to promise immunity from prosecution in exchange for information, and such promises are generally unenforceable.").

In accord with these authorities, we likewise hold that police officers, acting on their own, cannot enter into a binding immunity or non-prosecution agreement with a suspect or defendant. If Officer Nichols promised immunity to Green to secure Green's cooperation and his incriminating statements, and the State nevertheless brought charges against Green, then Green's remedy would be suppression of all evidence yielded by the officer's promise. "It is well settled that a confession is improperly induced if it is made in response to a promise of immunity from prosecution." *Smith v. State*, 787 P.2d 1038, 1039 (Alaska App.1990).

■ However, the fact that a defendant's confession has been improperly obtained does not entitle a defendant to dismissal of all charges. In *United States v. Blue*, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966), the Supreme Court stated:

Even if ... the Government [acquired] incriminating evidence in violation of the Fifth Amendment, [a defendant] would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial.... Our numerous precedents ordering the exclu-

sion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by the exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book.

*Blue*, 384 U.S. at 255, 86 S.Ct. at 1419 (footnote omitted). *Accord, People v. Manning*, 672 P.2d 499, 512 (Colo.1983):

In cases ... involving [a defendant's] reasonable and detrimental reliance upon a governmental promise, the question of remedy turns ultimately on what type of relief will accord the defendant substantial justice.... When [remedies other than specific performance] are available, then the court should exercise a reasonable discretion in fashioning a form of relief that can secure substantial justice to the defendant and at the same time accommodate the legitimate interests of the government.

*See also People v. Dandridge*, 152 Ill. App.3d 941, 105 Ill.Dec. 904, 906, 505 N.E.2d 30, 32 (1987), *appeal denied*, 115 Ill.2d 545, 110 Ill.Dec. 460, 511 N.E.2d 432 (1987).

Judge Wolverton had already suppressed Green's confession and its fruits because the Unalaska police had violated *Stephan*. Green was entitled to no additional relief.

We recognize that courts may have the equitable power to order specific performance of an unauthorized promise of immunity in exceptional cases—cases in which a defendant's detrimental reliance on the unauthorized promise has put the defendant in a position where suppression of the evidence obtained through the unenforceable promise would not cure the injustice to him or her.[1] Green's case, however, does not present such circumstances.

■ Green's final contentions on appeal concern his sentence. Green, a second felo-

1. See, for example, *Rihl v. State*, 413 N.E.2d 1046, 1053 (Ind.App.1980), refusing to enforce an alleged promise of immunity by the police when "factors which [might] justify the equita-

ble enforcement of an agreement between a representative of the State and a defendant on public policy grounds simply are not present".

ny offender, was subject to presumptive sentencing. Relying on the fact that he had told the police where to find Nufer's wallet and money, Green proposed one statutory mitigating factor: AS 12.55.-155(d)(10), that "before the defendant knew that the criminal conduct had been discovered, the defendant fully compensated or made a good faith effort to fully compensate the victim of the defendant's criminal conduct for any damage or injury sustained". Green also asserted that his cooperation with the police demonstrated his uncommonly good potential for rehabilitation, the non-statutory mitigator recognized by this court in *Smith v. State*, 711 P.2d 561, 569–572 (Alaska App.1985).

Judge Wolverton was obviously correct when he concluded that mitigating factor (d)(10) did not apply to Green's case. To prove mitigator (d)(10), Green had to show that his effort to compensate the victim was made "before [Green] knew that the criminal conduct had been discovered". Green revealed the location of Nufer's wallet and money only after Reed had identified him as the burglar and Officer Parker had arrested him. Thus, mitigator (d)(10) was unavailable to him.

For similar reasons, Judge Wolverton rejected Green's argument that his cooperation with the police demonstrated his uncommonly good potential for rehabilitation. Judge Wolverton concluded that Green's cooperation had been motivated, not by remorse or desire to do the right thing, but by the prospect of having the charges dropped. Judge Wolverton's conclusion is not clearly erroneous. *Lepley v. State*, 807 P.2d 1095, 1099 n. 1 (Alaska App.1991).

The judgement of the superior court is AFFIRMED.