**COMMONWEALTH of Pennsylvania,**
**Appellant,**

v.

**William L. BRYAN, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 7, 2002.

Filed Feb. 24, 2003.

Stuart B. Suss, Asst. Dist. Atty., Norristown, for Com., appellant.

Paul J. Ryan, Lock Haven, for appellee.

BEFORE: DEL SOLE, P.J., McEWEN, P.J.E., HUDOCK, JOYCE, STEVENS, TODD, KLEIN, BENDER and GRACI,* JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 This is an appeal from an order which dismissed with prejudice a charge of driving while under the influence of alcohol filed against Appellee. This dismissal was made after the trial court *sua sponte* inquired about the delay in this matter. The court issued a rule to show cause why the charges should not be dismissed and the Commonwealth responded with reference to a non-prosecution agreement between Appellee and the arresting police officer. The court thereafter issued its order of dismissal. The Commonwealth on appeal argues that Appellee was not "entitled to the dismissal" where the agreement was executed without knowledge or consent of the district attorney, where Appellee did not comply with the terms of the agreement and where the trial court acted *sua sponte*. Appellant's Brief at 4. We reverse because the trial court erred in acting *sua sponte* and because the remedy it fashioned was not appropriate under the facts of this case.

¶ 2 On October 1, 1999, the police chief of the Avis Borough Police Department, Paul Polen, stopped Appellee's vehicle after observing erratic driving. When Appellee failed field sobriety tests he was arrested and transported to a local hospital where he refused blood testing. While at the hospital, Appellee spoke to Chief Polen and suggested a "deal" in which Appellee would make controlled drug purchases at his place of employment and introduce undercover people into his workplace, in exchange for which Officer Polen would refrain from filing charges. Chief Polen drove Appellee to his home from the hospital, contemplated the offer and advised Appellee to "sleep on it" and to call the station the following Monday if he still desired to make this "deal."[1] Appellee later contacted Chief Polen who introduced Appellee to Gordon Mincer, a narcotics agent with the Pennsylvania State Attorney General's Office. An agreement was reached whereby the Chief would not file driving under the influence charges if Appellee, working with Agent Mincer, successfully made or arranged for the controlled buy of certain controlled substances. This agreement was reached without the knowledge or consent of the Clinton County District Attorney's office.

¶ 3 When Appellee failed to cooperate as agreed, a criminal complaint was filed against him on March 20, 2000, charging him with driving while under the influence of alcohol. A plea agreement was reached and on August 14, 2000, Appellee appeared in court to enter his plea. During these proceedings the court, apparently with regard to the delay in the matter, remarked "Where has this case been?" N.T., 8/14/00, at 3. The district attorney was permitted to approach the bench and a discussion was held off the record. Thereafter the court issued a rule upon the Commonwealth to show cause why the

---

* Judge GRACI did not participate in this decision.

1. We note that Appellee was released by the Chief without the filing of a complaint in accordance with Pa.R.Crim.P. 518(b), and that a complaint was not issued within 5 days of Appellee's release in contravention of Pa. R.Crim.P. 518(c). (now Pa.R.Crim.P 519(B)(1) and (2), respectively, effective September 1, 2002).

charges against the defendant should not be dismissed as a "result of the inordinate delay in filing of the criminal charges in this matter." *Id.* at 4.

¶ 4 At the hearing which followed, Chief Polen testified regarding the deal he made with Appellee in which Appellee agreed to make controlled buy drug purchases. The chief testified that had Appellee fulfilled this obligation charges would not have been filed, but Appellee never followed through and the charges were eventually brought. He further testified that this agreement was never consented to or discussed with or approved by the Clinton County District Attorney. The Commonwealth argued to the court that Appellee was not prejudiced despite the delay in this matter. The court ultimately issued its ruling dismissing the prosecution. It offered the following rationale for its ruling:

> While technically no motion has been filed by Defendant under Rule 315 [now Rule 587], we are so disturbed by the actions of the arresting officer in this matter that we believe dismissal of the charges is in the interest of justice solely for the purpose of discouraging similar conduct in the future. We are concerned this case may be only the tip of the iceberg and that prosecutional negotiations are being made not by the District Attorney but by individual police officers. We find it highly inappropriate that decisions regarding the continuation of prosecutions are based upon subjective determinations by the arresting officer with respect to defendant's conduct unrelated to the crime under investigation.

Trial Court Opinion, 9/21/00, at 2–3.

¶ 5 We begin by noting that the trial court properly recognized the invalidity of the non-prosecution agreement made by Appellee and the police. In *Common-*

*wealth v. Stipetich*, 539 Pa. 428, 652 A.2d 1294 (1995), an agreement was made between a police officer and a homeowner's attorney which promised that if the homeowner answered questions regarding the source of contraband found in his home no charges would be filed. Although the homeowner fulfilled his part of the agreement by answering all questions posed by the police, he and his wife were charged with possession of a controlled substance. The homeowners then filed a motion to dismiss the charges citing the non-prosecution agreement. The trial court granted the motion, but the Supreme Court reversed finding the agreement was invalid because the police did not have the authority to bind the district attorney's office. The court referred to the distinct role possessed by the district attorney's office and remarked:

> The district attorney's power to prosecute cannot be restricted by the actions of municipal police officers who might, in any given case, deem it worthless or ill-advised to prosecute. While the police exercise, as a practical matter, a certain discretion in deciding whether to make an arrest, issue a citation, or seek a warrant, the ultimate discretion to file criminal charges lies in the district attorney. Police officers have no authority to enter agreements limiting the power of the district attorney in this regard.

*Id.* at 1295.

¶ 6 The Court, finding the non-prosecution agreement invalid, refused to enforce the agreement and bar prosecution. Rather, it concluded that any detrimental evidence procured through the inaccurate representation that a prosecution would not be brought would be suppressed. The court stated that this ruling "places the [homeowners] in the same position as if the unauthorized promise not to prosecute had never been made by the police." *Id.*

at 1296. In reaching this ruling, the Court cited to *People v. Gallego*, 430 Mich. 443, 424 N.W.2d 470 (1988), wherein the appellant, aggrieved by the breach of an unauthorized agreement with the police, providing that he would not be prosecuted, questioned whether he was entitled to specific performance of that agreement. The court denied the appellant's request for specific performance based on the fact that the police lacked the authority to make a binding promise of immunity or not to prosecute. The court held that specific performance would amount to preclusion of an otherwise valid prosecution. The court noted that enforcement of the unauthorized agreement would have a potential for abuse for it would allow the police unbridled discretion. Further, it recognized as a related concern the potential for endless litigation and confusion which the enforcement of unauthorized agreements would create.

¶ 7 In this case the trial court recognized the invalidity of the non-prosecution agreement. Like the Court in *Stipetich* and *Gallego*, the trial court in this case found the non-prosecution agreement made by the police unauthorized and therefore unenforceable. However, unlike *Stipetich* and *Gallego*, the court did dismiss the charges against the defendant. The dismissal was ordered "in the interest of justice solely for the purpose of discouraging similar conduct in the future." Trial Court Opinion at 2.

¶ 8 In ordering the dismissal, the trial court cited to *Commonwealth v. Snyder*, 385 Pa.Super. 58, 560 A.2d 165 (1989), and *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968), which both discuss a trial judge's discretion to order the dismissal of a prosecution upon motion and a showing that the information has not been filed within a reasonable time. The trial court acknowledged that Appellee did not file a motion in this case under Pa. R.Crim.P. 315. This rule, now renumbered Pa.R.Crim.P. 587, permits the dismissal of a prosecution or "such other order as shall be appropriate in the interests of justice ... upon motion and showing that an information has not been filed within a reasonable time." *Id.*

¶ 9 This Court in *Commonwealth v. Murphy*, 305 Pa.Super. 246, 451 A.2d 514 (1982) (plurality opinion), considered the trial court's *sua sponte* dismissal of charges against the defendants following a 32–month pre-arrest delay. The Court, referring to the practice of reaching issues not presented by litigants, criticized the trial judge's actions. It found the fact that the trial court raised the due process issue *sua sponte* required it to vacate the court's order. Alternatively, the Court held that, because the trial court failed to find that the defendants were prejudiced by the pre-arrest delay, its ruling was incorrect on the merits. See also *Commonwealth v. Nelson*, 456 Pa.Super. 349, 690 A.2d 728 (1997) (ruling that the trial court impinged upon the role of the litigants by relying upon issues raised *sua sponte* to dismiss the proceedings).

¶ 10 Even were we to consider that the court's action, although *sua sponte*, was in the interest of justice to deter the police from similar conduct in the future, we nevertheless find its dismissal cannot be upheld. In *Commonwealth v. Kindness*, 247 Pa.Super. 99, 371 A.2d 1346 (1977), the Court reviewed the historical power to *nol pros*. It found that, although the authority of a prosecutor to enter a *nol pros* has been limited, the court has no power to order a *nol pros* without the consent of the prosecuter. The Court ruled that aside from those situations in which dismissal of a prosecution is the means by which procedural rights are vindicated, such as speedy trial rights or double jeopardy, "a Pennsyl-

vania court has the power to dismiss a prosecution over the prosecuting attorney's objection only when the legislature expressly empowers it to do so." *Id.* at 1349. The Court contrasted the law of Pennsylvania with the express statutory provision found in California law which grants courts an inherent power to dismiss a criminal charge in the interests of justice. It noted that Pen. Code Section 1385 of the California Penal Code, reads in pertinent part:

The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.

A similar statutory provision is found in the State of Washington. Therein CrR 8.3(b) provides:

The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

Cited in *State v. Miller,* 92 Wash.App. 693, 964 P.2d 1196, 1200 n. 6 (1998).

¶ 11 No such similar statutory provision is found in this Commonwealth. Further, even in those situations where "in the interests of justice" a dismissal is an appropriate consideration to remedy police or prosecutorial misconduct, it is not employed absent a showing of demonstrable prejudice. *State v. Carcieri,* 730 A.2d 11 (R.I.1999) (citing *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). "[D]ismissal in criminal cases is employed only as a last resort, and is limited to cases of extreme and substantial prejudice." *Carcieri* at 16 (citing *State v. Musumeci,* 717 A.2d 56, 63 (R.I.1998)).

¶ 12 In *Green v. State,* 857 P.2d 1197 (Alaska Ct.App.1993), the defendant claimed that the prosecution should be barred because the arresting officers promised him immunity from prosecution if he cooperated by returning stolen property. The court refused to uphold the agreement where the police had no authority to promise immunity to a criminal defendant and the defendant did not suffer a detrimental reliance which could not be cured through the suppression of evidence. The court stated:

We recognize that courts may have the equitable power to order specific performance of an unauthorized promise of immunity in exceptional cases—cases in which a defendant's detrimental reliance on the unauthorized promise has put the defendant in a position where suppression of the evidence obtained through the unenforceable promise would not cure the injustice to him or her.

*Id.* at 1201.

¶ 13 In *State v. Marsh,* 290 N.J.Super. 663, 676 A.2d 603 (App.Div.1996), a case remarkably similar to one before us, a defendant sought to enforce an agreed promise by a township police officer which called for dismissal of a DWI summons if the defendant cooperated in an unrelated drug investigation. The Court first noted that "there is no room to allow a municipal police officer to make deals with 'offenders against the laws.'" *Id.* at 605. The Court rejected the defendant's claim which argued that the Due Process clause of the Fourteenth Amendment to the United States Constitution required that the State fulfill the detective's promise because the defendant detrimentally relied on the promise by cooperating with the State in an unrelated drug investigation. The court rejected his contention "because due process and notions of fundamental fairness are implicated only when a promise

made to a defendant induces his detrimental reliance in derogation of a constitutional right." *Id.* at 606. The court found that the defendant would suffer no constitutional or legal prejudice with regard to his pending DWI trial by its refusal to enforce the agreement. It noted the defendant "was placed in the same legal position he assumed prior to the promise, simply having to defend himself against the drunken driving charge in the municipal court and Law Division." *Id.* In making this ruling, the *Marsh* court cited to *State v. Caswell,* 121 Idaho 801, 828 P.2d 830, 834 (1992). There the Court refused to enforce an unauthorized "agreement" which was based on the defendant's cooperation. The Supreme Court of Idaho declined to specifically enforce it on the ground that "'cooperation in providing a list of names and making appointments to complete a "buy" of narcotics' did not place defendant in legal jeopardy with regard to his pending trial." *Marsh* at 606 (citing *Caswell* at 834).

■ ¶ 14 In this case, by failing to enforce the agreement, Appellee would not suffer any deprivation of his legal rights. Had incriminating information been obtained against Appellee as a result of the unauthorized agreement, he would be entitled to have that evidence suppressed. See *Commonwealth v. Stipetich,* 539 Pa. 428, 652 A.2d 1294. However, nothing incriminating was obtained as a result of the agreement. Under the agreement, Appellee was expected to cooperate with undercover drug sales, much like the defendant in *Marsh.* And, like the defendant in *Marsh,* Appellee will not be prejudiced or deprived of any constitutional right by permitting the charges to proceed. Rather, Appellee will be placed in the position he was in before the agreement was made and he will have to defend against a drunk driving charge.

¶ 15 While we concur with the trial court's admonition of the Chief's actions and understand its attempt to discourage future improprieties of a similar nature, we find the ultimate sanction of dismissing the criminal charges to be too severe in the absence of prejudice to the defendant. We can only hope that local police have been educated as to their role and authority and will act in accordance with the duties of their position. We do not however, believe it is fair or just to dismiss charges against Appellee in an effort to curb the repetition of this type of misconduct. Appellee has suffered no prejudice nor has he incurred any detriment in reliance on the unauthorized promise made by the Chief. Valid charges were brought against Appellee by the district attorney. The Commonwealth and the public have a legitimate interest in seeing that prosecution of these charges proceeds. Accordingly, we reverse the trial court's order dismissing with prejudice the charges filed against Appellee.

¶ 16 Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

¶ 17 McEWEN, P.J.E. files a Dissenting Opinion.

McEWEN, P.J.E., Dissenting.

¶ 1 While the majority Opinion reveals a careful analysis and provides a perceptive expression of rationale, I am obliged to dissent, since I cling to the view that informers are so personally vile, their bargains so pernicious,[2] and agreements with

2. *Commonwealth ex rel. Saltzburg v. Fulcomer,* 382 Pa.Super. 422, 555 A.2d 912, 913 and n. 2 (1989).

them so precarious,[3] that all negotiations and association with them should be undertaken only by prosecutors. Thus, as a matter of principle, the enforcement personnel of this Commonwealth must not be permitted, as are the federal police, to dominate and control the prosecutor and thereby become a system of law unto themselves. And, of course, the breach of such a principle by enforcement personnel must, like prosecutorial misconduct, trigger sanctions, for to permit the instant prosecution to proceed renders that principle but a platitude. Thus it is that I share the distress of the distinguished President Judge Richard N. Saxton, Jr., over the police conduct, and would, therefore, affirm his decision to dismiss the case against the defendant.

---

**3.** *Commonwealth v. Crosland,* 397 Pa.Super. 622, 580 A.2d 804 (1990).