1309

SERVICE MANAGEMENT, INC., d/b/a Berkeley Convalescent Center, Appellant v. STATE HEALTH AND HUMAN SERVICES FINANCE COMMISSION as Successor in Interest to the South Carolina Department of Social Services, ... Respondent.

(379 S. E. (2d) 442)

Court of Appeals

*David M. Rogers* of *Carter, Smith, Meriam, Rogers & Traxler,* Greer, *for appellant.*

*W. Allen Nickles, III* of *Gergel, Burnette, Nickles, Grant & Ouzts,* Columbia, *for respondent.*

Heard Feb. 14, 1989.

Decided March 27, 1989.

CURETON, Judge:

This case concerns recovery of alleged overpayments of Medicaid funds. Service Management Inc. d/b/a Berkeley

Convalescent Center (Berkeley) is a nursing home in Moncks Corner, South Carolina. The dispute relates to the appropriate reimbursement rate to be paid Berkeley for cost of capital expenses. The State Health and Human Services Finance Commission (State) contends the reimbursement rate is limited to $7.79 per patient day effective from the date Berkeley began its operation. Berkeley contends it is entitled to reimbursement at the rate of $9.36 per patient day for the period September 9, 1981, through January 31, 1982, and $8.78 for the contract periods beginning February 1, 1982. The circuit court affirmed the final administrative decision holding Berkeley was entitled to reimbursement at the rate of $7.79 per patient day. Berkeley appeals the decision of the circuit court. We affirm.

Berkeley began providing services under the South Carolina Medicaid Program on September 9, 1981. On that date Berkeley entered into a written contract with the State concerning reimbursement. The document was a standard form contract prepared by the State. The contract contained a provision relating to cost of capital. The provision stated "the maximum payment amount shall be an allowable cost up to seven dollars seventy-nine cents ($7.79) per patient day." This figure had been adjusted for the rate cycle beginning January 1, 1981. However, Computation of Rate Sheets prepared by state employees and attached to the Berkeley contract resulted in cost of capital payments to Berkeley of $9.36 per patient day for the period September 9, 1981, through January 31, 1982, and $8.78 for the period beginning February 1, 1982. These figures were derived by adding an inflation factor based upon the Consumer Price Index to the $7.79 maximum payment in the standard contract. Ralph Wessinger, the State employee who supervised the rate setting, testified at the administrative hearing he followed an existing practice in the agency by inflating the cost of capital rate to the beginning of the "rate cycle" for the new facility. In this case the rate cycle for Berkeley was determined to be its start-up date in September of 1981. The Deputy State Auditor testified there was no provision in the contract or the State Plan under Title XIX of the Social Security Act for inflating the cost of capital rate based upon a rate cycle beginning on the date a new facility opened. In

other words, the State's position is the "rate cycle" was a generic term designating a calendar year beginning January 1, 1981, and not an individualized time frame for each facility. After an audit, the State sought recovery of the alleged overpayments.

The basic thrust of Berkeley's argument is the rate computation was made by State employees and Berkeley had a right to rely on it; therefore, the State is bound by the computation. H. Thomas Taylor, president of Berkeley, was aware the computed rate was greater than the $7.79 per patient day stated in the contract. He had been in business for several years and was generally familiar with the reimbursement process. He referred in his testimony to the practice of the agency inflating the cost of capital rate. The testimony is not clear under what authority this practice originated but it was apparently followed for at least eighteen months before Berkeley began operation. The record does not disclose approval of the practice by the Board of the Department of Social Services. The Department of Social Services (DSS) was the predecessor in interest to the Health and Human Services Finance Commission and was the state agency involved at the time these matters arose.

The contract between Berkeley and the State provides ■■ Berkeley will be paid for services rendered to Medicaid patients pursuant to a per diem rate specified in Appendix A of the contract. Appendix A states the methodology to be used in determining the per diem rate. The cost of capital provision in Appendix A specifically refers to a maximum rate of $7.79 per patient day. A provision relating to an inflation factor specifically excludes cost of capital. Appendix A refers to a Computation of Rate Sheet. This sheet is a tool designed to itemize the various categories in the computation of the per diem rate but it does not authorize inflation of cost of capital.

We agree with the trial court the contract clearly states a maximum per diem cost of capital rate. An erroneous misconstruction of the contract by a State employee does not change its explicit terms and the State is not bound by the act of its officer in making an unauthorized payment. *See Wisconsin Central R.R. Co. v. United States*, 164 U.S. 190, 17 S. Ct. 45, 41 L.Ed. 399 (1896).

Berkeley argues the State is estopped from seeking ██ reimbursement of the overpayments. We disagree. A governmental body is not immune from the estoppel doctrine where its officers or agents act within the proper scope of their authority but "[t]he public cannot be estopped ... by the unauthorized or erroneous conduct or statements of its officers or agent which have been relied on by a third party to his detriment." *South Carolina Coastal Council v. Vogel*, 292 S. C. 449, 453, 357 S. E. (2d) 187, 189 (Ct. App. 1987); *See Oswald v. County of Aiken*, 281 S. C. 298, 315 S. E. (2d) 146 (Ct. App. 1984). The State employee had no duty or authority to inflate the cost of capital rate. The unauthorized conduct defeats the estoppel argument. *See Patterson v. Goldsmith*, 288 S. C. 551, 343 S. E. (2d) 661 (Ct. App. 1986). Accordingly, estoppel will not bar recoupment of overpayments obtained as a result of the error of a state's officer. *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U. S. 51, 104 S. Ct. 2218, 81 L. Ed. (2d) 42 (1984) (Medicare recoupment); *See also Daleview Nursing Home v. Axelrod*, 62 N. Y. (2d) 30, 475 N. Y. S. (2d) 826, 464 N. E. (2d) 130 (1984) (Medicaid recoupment).

A private party has no right to public funds received ██ as a result of the unauthorized conduct of a government employee. *See Federal Crop Ins. Corp. v. Merrill*, 332 U. S. 380, 68 S. Ct. 1, 92 L. Ed. 10 (1947); *Heyward v. S. C. Tax Commission*, 240 S. C. 347, 126 S. E. (2d) 15 (1962). Finally, parties entering into agreements with the state assume the risk of ascertaining that he who purports to act for the state stays within the bounds of his authority. *Federal Crop Ins. Corp.*, 332 U. S. 380, 68 S. Ct. 1. Therefore, the unauthorized conduct of state employees may not be construed as waiver on the part of the State. *See also, Carolina National Bank v. State of South Carolina*, 60 S. C. 465, 38 S. E. 629 (1901).

The decision of the trial court is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.