519 S.E.2d 116

**Shirley GOODWINE, Appellant,**

**v.**

**DORCHESTER DEPARTMENT OF SOCIAL SERVICES, Respondents.**

**No. 2974.**

Court of Appeals of South Carolina.

Submitted March 9, 1999.

Decided April 12, 1999.

Refiled June 9, 1999.

Rehearing Denied June 9, 1999.

414

Susan K. Dunn, of Charleston, for appellant.

Assistant General Counsel Virginia E. Williamson, of South Carolina Department of Social Services, of Columbia, for respondent.

## ORDER DENYING PETITION FOR REHEARING

PER CURIAM:

After careful consideration of the Petition for Rehearing, the Court is unable to discover any material fact or principle

of law that has been either overlooked or disregarded and, hence, there is no basis for granting a rehearing. It is, therefore, ordered that the Petition for Rehearing be denied. However, Opinion Number 2974, filed April 12, 1999, is withdrawn and the attached opinion is substituted.

HEARN, Judge:

Shirley Goodwine appeals from a circuit court order affirming the South Carolina Department of Social Services (DSS) Fair Hearing Committee's determination that Goodwine must repay Aid to Families with Dependent Children (AFDC) benefits she received as the result of agency error. We affirm.[1]

### Facts and Procedure

In 1981, Goodwine's sister gave birth to a child, but was unable to care for her due to emotional problems. Goodwine offered to take her niece into her home rather than see the child placed in foster care. While her niece was in her home, Goodwine qualified for and began receiving AFDC benefits for the child.

In 1985, Goodwine's sister decided she was able to provide a stable home for her daughter, and the child left Goodwine's home to live with her mother. Goodwine notified DSS[2] of the change in the child's residence and inquired how this change would affect the AFDC benefits. Goodwine's DSS caseworker informed her that it would be more troublesome than beneficial to reflect the child's changed residence on the AFDC paperwork, apparently because DSS was not convinced the change would be permanent. Accordingly, Goodwine followed her DSS caseworker's advice and continued to receive the

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. We note that Goodwine reported the custody change to her DSS human services worker, not to her AFDC worker, who more properly would have been charged with knowledge of the AFDC program.

AFDC benefits, spending the money on the child. Eventually, the AFDC benefits terminated.[3]

Some years later, DSS undertook to recoup the AFDC funds paid to Goodwine during the period when her niece was not living in her home. Goodwine requested a review of the recoupment, and an evidentiary hearing was held before the Fair Hearing Committee on May 5, 1995.[4] The Committee's decision, issued on August 4, 1995, held that Goodwine must repay the funds. Goodwine sought judicial review of this decision, and a hearing was held on April 10, 1997, in the circuit court of Dorchester County. By order dated July 15, 1997, the circuit court reversed the Committee's decision and ordered DSS to return all the recouped funds to Goodwine. After DSS filed a motion to alter or amend, the court vacated its original order and found that DSS had correctly recouped the funds from Goodwine. It is from this amended order that Goodwine appeals.

## *Analysis*

### I.

■ DSS argues that this appeal is not properly before this court because the Dorchester County Court of Common Pleas lacked subject matter jurisdiction to review the Committee's decision. We disagree.

The record reflects that Goodwine's initial request for a hearing before the Fair Hearing Committee was taken pursuant to S.C.Code Ann. § 1–23–310 *et seq.* (1976 & Supp.1998). Thereafter, Goodwine's appeal to the circuit court was properly made pursuant to Code section 1–23–380 (Supp.1998) and 27

---

**3.** The record and briefs in this case do not indicate how long Goodwine continued to receive the benefits or how much DSS is alleging she must repay.

**4.** At the time of the hearing, no DSS regulations specifically pertained to AFDC eligibility requirements. *See* 27 S.C.Code Ann.Reg. 114–11–10 *et seq.* (1976 & Supp.1990) (repealed by 15 S.C.Reg., No. 11 at 38, effective Nov. 22, 1991, and replaced by 19 S.C.Reg., No. 5 at 175–83, effective May 26, 1995, and later amended by 21 S.C.Reg. No. 6. Part 2 at 411–34, effective June 27, 1997).

S.C.Code Ann.Reg. 114–110 (1976) (hereinafter "DSS Regulation"). Code section 1–23–380 provides for judicial review upon the exhaustion of administrative remedies, and DSS Regulation 114–110(M) states that upon a final decision rendered by a Fair Hearing Committee, a claimant has duly exhausted all administrative remedies. Thus, the circuit court properly had subject matter jurisdiction over Goodwine's appeal.

█ DSS argues that Goodwine's case was actually contested under Code section 43–5–150 (Supp.1998), and consequently, that statute provides for appeal to the Administrative Law Judges Division (ALJ), not to the circuit court. We find this argument unavailing. There is simply no support in the record that Goodwine's case was heard pursuant to that Code section, while the record does support that Goodwine's initial appeal to the Fair Hearing Committee was made pursuant to section 1–23–380. Thus, we find no error in Goodwine's initial appeal to the circuit court as authorized by Code section 1–23–380 and DSS regulation 114–110(M).

## II.

█ Goodwine alleges that the doctrine of equitable estoppel applies to avoid the recoupment. She bases this argument upon her reliance on the DSS caseworker's assertion that leaving the AFDC benefits unchanged was appropriate. This argument is without merit.

█ The State may be subject to the estoppel doctrine in certain cases. *See, e.g., Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 87, 221 S.E.2d 773, 776 (1976) (holding City was estopped to deny a contract when the officer executing the contract was a proper person to enter into such a contract). However, that doctrine will not be applied to deprive the State of the due exercise of its police power or to thwart its application of public policy. *South Carolina Dep't of Social Servs. v. Parker*, 275 S.C. 176, 178, 268 S.E.2d 282, 283 (1980). In *Parker*, a father whose parental rights had

been terminated for failure to pay support argued he was never informed of his support obligations. The court there held: "To adopt this argument would clearly frustrate respondent in its efforts to protect the health and welfare of abused and abandoned children." *Id.*

■ A governmental body is not immune from the estoppel doctrine where its officers or agents act within the proper scope of their authority, but the government " 'cannot be estopped ... by the unauthorized or erroneous conduct or statements of its officers or agents which have been relied on by a third party to his detriment.' " *Service Mgmt. Inc. v. State Health & Human Servs. Fin. Comm'n,* 298 S.C. 234, 238, 379 S.E.2d 442, 444, (Ct.App.1989) (quoting *South Carolina Coastal Council v. Vogel,* 292 S.C. 449, 453, 357 S.E.2d 187, 189 (Ct.App.1987)). In *Service Management,* a nursing home was required to repay Medicaid funds erroneously calculated by a state employee who had no duty or authority to alter the contractual benefit amount by multiplying it by an inflation factor. *Service Mgmt.,* 298 S.C. at 237, 379 S.E.2d at 444. Likewise, in *Vogel,* a Coastal Council employee had no authority to represent to the Vogels that they could build a deck on their beach house seaward of the critical line. The court held: "The Council cannot now be estopped by such an unauthorized act from requiring the removal of the illegally-constructed deck." *Vogel,* 292 S.C. at 453, 357 S.E.2d at 189; *see also Office of Personnel Mgmt. v. Richmond,* 496 U.S. 414, 432, 433–34, 110 S.Ct. 2465 (1990) (holding payments of money from the federal treasury are limited to those authorized by statute, and erroneous advice given by a government employee is insufficient to estop the government from denying benefits not otherwise permitted by law); *Farrow v. City Council of Charleston,* 169 S.C. 373, 383, 168 S.E. 852, 855–6 (1933) (holding city not bound by its treasurer's erroneous representation of no outstanding paving liens because the treasurer was not authorized to speak for the city and had no duty to give verbal paving assessment information; had such authority existed, an erroneous statement would still not have bound the city).

In the instant case, Goodwine's DSS caseworker, not her AFDC worker, represented that no change in receipt of AFDC benefits was necessary. This was an unauthorized and erroneous statement outside of that worker's scope of employment. In any event, no DSS caseworker has the discretion to waive changes in eligibility for public assistance benefits. *See, e.g.,* S.C.Code Ann. § 43–5–140(d) (1978) ("When the department receives information that would result in a change in . . . eligibility, the department *shall* take action to . . . redetermine eligibility . . . within ten days of receipt of such information." (emphasis added)); S.C.Code Ann. § 43–5–140(a) (after providing eligibility information to DSS, the aid recipient and caseworker *must* execute a formal acknowledgment that eligibility and reporting requirements were explained to and understood by the recipient); *see also* S.C.Code Ann. § 43–5–10 (Supp.1998) (DSS "shall be responsible for maintaining uniformity in the administration of public welfare throughout the State. The director shall be the only person authorized to determine and implement the policies of the department .").

There is no doubt here that Goodwine complied with her statutorily mandated duty to inform DSS of a change in her eligibility for AFDC funds. However, her DSS caseworker was without authority to ignore the information and let the status quo remain. Clearly, the caseworker had an affirmative duty to report the change in eligibility within ten days of receiving the information. Failure to do so constituted unauthorized and erroneous conduct. Consequently, estoppel does not apply.

## III.

■ Goodwine argues that the circuit court judge erred in interpreting 42 U.S.C. § 602(a)(22) (1994) (rewritten by Pub.L. 104–93, Title I, § 103(a)(1), 110 Stat. 2113, effective Aug. 22, 1996, and later amended by Pub.L. 105–33, Title V, §§ 5501, 5514(c), 111 Stat. 606, 620, effective Aug. 5, 1997), to require recoupment when the State affirmatively allowed the overpay-

ment and the funds were in fact used for the child's benefit and support. We disagree.

AFDC is a federal-state partnership for providing aid to needy families. States that participate must comply with all applicable federal laws and regulations under Title IV–A of the Social Security Act in administering the program within their borders. *Heckler v. Turner,* 470 U.S. 184, 189, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985). As part of the Omnibus Budget Reconciliation Act (OBRA) of 1981, Congress mandated that states participating in the AFDC program collect all welfare overpayments, regardless of fault. "A State plan for aid and services to needy families with children *must* . . . provide that the State agency *will* promptly take *all necessary steps* to correct *any* overpayment or underpayment of aid under the State Plan. . . ." 42 U.S.C. § 602(a)(22) (1994) (emphasis added).[5]

 Further guidance is provided in 45 C.F.R. 233.20(a)(13) (1991), which directs that "[t]he State *must* take *all reasonable steps* necessary to promptly correct *any* overpayment." (emphasis added). Taken together, the clear and unambiguous language of these enactments leaves no room for a state to waive recoupment of an overpayment, regardless of any lack of fault on the beneficiary's part. *Johnston v. Iowa Dep't of Human Servs.,* 932 F.2d 1247, 1249 (8th Cir.1991) (upholding recoupment even though agency error caused the overpayment); *see also Edwards v. McMahon,* 834 F.2d 796, 800–1 (9th Cir.1987) (clear language of AFDC statutes and regulations requires states to correct all underpayments regardless of fault); *Prince v. Division of Family Servs.,* 886 S.W.2d 68, 73 (Mo.Ct.App.1994) (recouping overpayment was appropriate regardless of recipient's lack of fault).

---

**5.** In fact, current DSS Regulations mirror this language. *See, e .g.,* DSS Reg. 114–1140(Q)(1)(c) (1976 & Supp.1998) (mandating "uniform statewide procedures for recovery of overpayments" and allowing DSS to pursue "appropriate action under State law against the income or resources of those individuals [responsible for repayment]" without reference to fault or lack thereof).

Goodwine fails to meaningfully distinguish *Johnston* from her situation. In *Johnston*, the family was ineligible for benefits because the agency failed to tell Mr. Johnston that his registering with the state public employment office was a prerequisite to eligibility. Mr. Johnston did not register, was technically ineligible as a result, and was required to repay the benefits issued to his family during that time. The court held: "Welfare recipients, like other citizens, are presumed to know the requirements of the law and to be able to act in conformity with them." *Johnston*, 932 F.2d at 1249.

Goodwine argues that unlike *Johnston*, she knew the law and complied with her statutory duty to report the change in her niece's residence to DSS. She continued to receive the funds and use them for the child's benefit only at the affirmative direction of her DSS caseworker. While this does distinguish the instant case factually from *Johnston*, the underlying law remains the same. We are sympathetic to Goodwine's plight; nevertheless, we are constrained by the relevant statutes and regulations, which mandate recoupment even when the overpayment was caused by agency error.

**AFFIRMED.**

HUFF and STILWELL, JJ., concur.