545 S.E.2d 840

**The STATE, Appellant,**

v.

**John PEAKE, Respondent.**

No. 3327.

Court of Appeals of South Carolina.

Heard Feb. 8, 2001.

Decided April 9, 2001.

Rehearing Denied May 23, 2001.

Certiorari Granted Oct. 11, 2001.

---

74

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Norman Mark Rapoport, and Special Assistant Attorney General Alexander G. Shissias, all of Columbia, for appellant.

John Hawkins, of Lister & Hawkins, of Spartanburg, for respondent.

HOWARD, Judge:

John Peake was indicted by the Grand Jury of Greenwood County for violating the Pollution Control Act. S.C.Code Ann.

§ 48–1–10 to –350 (1987 & Supp.2000). Following a pre-trial hearing, the circuit court dismissed the indictment, concluding the Department of Health and Environmental Control (DHEC) had entered into a binding agreement on behalf of the State to forego criminal prosecution of Peake in exchange for payment of a civil sanction. The State appeals, asserting, among other things, that DHEC did not have legal authority to bind the State to an agreement limiting criminal prosecution. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Peake developed a tract of land located in Greenwood County, South Carolina, building townhouses and patio homes. DHEC required Peake to install a wastewater treatment system costing $325,000. The development project failed, and DHEC alleged Peake abandoned the treatment facility in violation of code section 48–1–90(a), which prohibits the discharge of waste into the environment, except in compliance with a permit issued by DHEC. *See* S.C.Code Ann. § 48–1–90(a) (1987).

Peake and his attorney met with DHEC officials, including Water Pollution Control Agent Anastasia Hunter–Shaw. Hunter–Shaw negotiated on behalf of DHEC and demanded that Peake acknowledge wrongdoing, convey ownership of the wastewater treatment facility to the municipality in which it was located, and pay a fine of $100,000. Over the next few weeks, Peake negotiated with DHEC through his attorney.[1] Peake refused to acknowledge wrongdoing or pay a fine, but eventually agreed to convey ownership of the treatment facility to the municipality without remuneration to end the controversy. Hunter–Shaw agreed to this compromise on behalf of DHEC, and the deed conveying the facility was executed and delivered on September 30, 1997.

Unbeknownst to Peake, Hunter–Shaw had referred the violations to the criminal investigative division of DHEC. The criminal division decided to refer the matter to the Attorney General for prosecution. DHEC attorney Alex Shissias was appointed by the Attorney General as a Special Assistant to

---

1. This attorney no longer represents Peake.

seek an indictment and prosecute the case against Peake. On October 20, 1997, Peake was indicted by the Greenwood County Grand Jury for abandoning the wastewater treatment facility in violation of sections 48–1–90(a) and 48–1–320 of the Pollution Control Act (Act). *See* S.C.Code Ann. § 48–1–90(a) (1987); S.C.Code Ann. § 48–1–320 (1987).

When the case was called for trial, Peake moved to dismiss the indictment, arguing that the State had agreed to accept the $325,000 treatment facility as an end to all threats of civil and criminal sanction. Although Peake acknowledged that his understanding of the agreement emanated from his discussions with his attorney and that criminal sanctions had never been directly discussed with DHEC, he nevertheless argued that the parties had agreed to transfer the treatment facility to end the entire matter, including the threat of criminal prosecution. Peake's former attorney corroborated this understanding, testifying that Hunter–Shaw had indicated that, if Peake complied, the "entire matter" would "all go away" and "[t]here would be nothing further [to] come from the matter if he would do that."

The State denied the agreement and countered that neither Hunter–Shaw nor DHEC had the legal authority to enter into an agreement foregoing prosecution of a criminal offense. Hunter–Shaw maintained that she had no criminal enforcement function in DHEC, that criminal sanctions had never been mentioned to Peake or his attorney, and that no such agreement had been reached.

At the conclusion of the hearing, the trial court dismissed the indictment. The court noted that Hunter–Shaw had reported Peake's actions to DHEC's criminal investigative division. The court then concluded that the decision to prosecute and refer Peake's case for criminal action to the Attorney General's office was within the exclusive jurisdiction and power of DHEC. The court further found that "[t]he State without, and but for, the action of the Department of Health and Environmental Control would not have sought any indictment against Mr. Peake." The court ruled that Peake's actions were based upon "reasonable inferences" that criminal as well as civil liability was addressed by an agreement "in the nature of a covenant not to prosecute," given in exchange for

Peake's conveyance of the wastewater treatment facility to a governmental subdivision of the State.

On appeal, the State contends the trial court erred in ruling that DHEC had the authority to bind the Attorney General to an agreement not to prosecute for a criminal offense. The State further claims the court erred in ruling that the State could be estopped from prosecuting Peake criminally. We conclude that DHEC could not legally bind the Attorney General to the agreement and that the State is not estopped from prosecuting Peake.

### DISCUSSION

Our supreme court has ruled that a guilty plea rests upon contract principles and that the State can be required to fulfill the terms of its promise to forego further prosecution of the accused when such forbearance is a part of the benefit of the bargain. *State v. Thrift*, 312 S.C. 282, 292–93, 440 S.E.2d 341, 347 (1994) (citing *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). The court noted that "a plea agreement analysis must be more stringent than a contract because the rights involved are fundamental and constitutionally based." *Thrift*, 312 S.C. at 293, 440 S.E.2d at 347 (citing *United States v. Ringling*, 988 F.2d 504 (4th Cir.1993)).

Other jurisdictions have applied these principles to an agreement not to prosecute, even where no guilty plea has been entered. *See United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir.1983) (finding that cooperation agreement is analogous to a plea bargain); *United States v. Rodman*, 519 F.2d 1058, 1059–60 (1st Cir.1975) (affirming dismissal of indictment when SEC breached agreement to make no prosecution recommendation to United States Attorney in return for defendant's cooperation). However, enforcement of an agreement not to prosecute is subject to two conditions: (1) the agent must be authorized to make the promise; and (2) the defendant must rely to his detriment on the promise. *See United States v. Streebing*, 987 F.2d 368, 372 (6th Cir.1993); *see also Ringling*, 988 F.2d at 506–07 (finding that Assistant United States Attorney could bind government and that the defendant relied on government's promise to allow him opportunity to cooperate in order to seek reduced sentence); *Yarber v.*

*State,* 375 So.2d 1212, 1227 (Ala.Crim.App.1977) (stating that "law enforcement officers are utterly without power and authority to grant an accused immunity from arrest and prosecution for violating our criminal laws"), *rev'd on other grounds,* 375 So.2d 1229 (Ala.1978); *Green v. State,* 857 P.2d 1197, 1199 (Alaska Ct.App.1993) ("We base our decision to deny defendant specific performance on the fact that the police lacked the authority to make a binding promise of immunity or not to prosecute."); *People v. Thompson,* 88 Ill.App.3d 375, 43 Ill. Dec. 600, 410 N.E.2d 600, 603 (1980) ("[A]n auditor with the Illinois Department of Revenue is without authority to determine prosecution for criminal conduct."); *State v. Crow,* 367 S.W.2d 601, 605 (Mo.1963) ("[T]he sheriff has no standing to grant or offer immunity as a bar to a prosecution."); *State v. Cox,* 162 W.Va. 915, 253 S.E.2d 517, 521 (1979) (holding "that law enforcement officers do not have authority to promise immunity from prosecution in exchange for information, and such promises are generally unenforceable").

The trial court ruled that Hunter–Shaw was authorized under section 48–1–220 to promise not to criminally prosecute Peake in return for the conveyance of the wastewater treatment facility. Section 48–1–220 states that "[p]rosecutions for the violation of a final determination or order shall be instituted *only* by the Department or as otherwise provided for in this chapter." S.C.Code Ann. § 48–1–220 (1987) (emphasis added). Section 48–1–210 describes the Attorney General as DHEC's "legal advisor" and provides that the Attorney General "shall *upon request of the Department* institute injunction proceedings or any other court action to accomplish the purpose of this chapter." S.C.Code Ann. § 48–1–210 (1987) (emphasis added). This language is consistent with the circuit court's conclusion that the Legislature intended to place the decision to prosecute for criminal offenses under the Act in DHEC's hands exclusively.

■ Based upon these and other sections within the Act which place regulation exclusively in the hands of DHEC, Peake argues that DHEC makes the decision to prosecute, which is separate and distinct from the right to supervise the prosecution of cases, reserved to the Attorney General by the

South Carolina Constitution.[2] *See* S.C. Const. art. V, § 24 ("The Attorney General shall be the chief prosecuting officer of the State with authority to *supervise* the prosecution of all criminal cases in courts of record." (emphasis added)). The trial court agreed with this reasoning and concluded Hunter–Shaw had the authority to promise forbearance of criminal prosecution in exchange for civil sanctions.

We conclude this was error. Our supreme court addressed this issue in *State v. Thrift* and concluded that the power constitutionally granted to the Attorney General to supervise the prosecution of criminal cases includes the power to decide which cases to prosecute. 312 S.C. at 307, 440 S.E.2d at 355.

■ In *Thrift*, a defendant was indicted for violation of the pre–1991 Ethics Act, S.C.Code Ann. § 8–13–490 (1986) (repealed 1991). The "old" Ethics Act contained language requiring a referral from the Ethics Commission to the Attorney General before prosecution could be maintained. On appeal, the defendant argued the requirement of referral thereby placed the decision to prosecute in the hands of the Ethics Commission, not the Attorney General. Our supreme court disagreed, stating:

> [Article V, § 24] is dispositive that any requirement which places the authority to supervise the prosecution of a criminal case in the hands of the Ethics Commission is unconstitutional. As noted earlier in the plea agreement issue, the prosecution has wide latitude in selecting what cases to prosecute and what cases to plea bargain. This power arises from our State Constitution and cannot be impaired by legislation.

*Thrift*, 312 S.C. at 307, 440 S.E.2d at 355. Under *Thrift*, the decision to prosecute is constitutionally granted to the Attorney General and cannot be impaired by the Legislature.

---

2. Peake also suggests that the dual role held by DHEC attorney Shissias renders this situation unique. However, there is no assertion that Shissias was appointed as a Deputy Attorney General prior to Peake's agreement with Hunter–Shaw, or that Shissias participated in any way in negotiating the agreement. Furthermore, Shissias was "deputized" as an Assistant Attorney General in order to seek the indictment and handle the prosecution of the case, all of which occurred after the agreement with Hunter–Shaw and the transfer of the wastewater treatment facility.

█ It is axiomatic that legislation must be construed so as to be constitutional. A basic rule of statutory interpretation requires a construction which is constitutional. "Constitutional constructions of statutes are not only judicially preferred, they are mandated; a possible constitutional construction must prevail over an unconstitutional interpretation." *Henderson v. Evans,* 268 S.C. 127, 132, 232 S.E.2d 331, 333–34 (1977).

█ The State argues that sections 48–1–220 and 48–1–210 were intended to give the exclusive control over civil enforcement of the Act to DHEC. Our supreme court resolved the controversy in *Thrift* by recognizing the civil nature of the Ethics Act complaint and adopted a narrow construction of that statute. 312 S.C. at 307, 440 S.E.2d at 355. Therefore, we agree with the State that these sections must be construed to apply only to civil enforcement of final determinations and orders issued pursuant to the Act. Thus, even if Hunter–Shaw intended to reach a binding agreement to forego prosecution of Peake in return for civil sanctions, she was without power to do so.

█ Furthermore, absent authority of Hunter–Shaw to enter into an agreement, the State cannot be estopped from prosecuting Peake. The State may be subject to estoppel where its officers or agents act within the proper scope of their authority. *Goodwine v. Dorchester Dep't of Soc. Servs.,* 336 S.C. 413, 418–19, 519 S.E.2d 116, 118–19 (Ct.App.1999). However, estoppel "will not be applied to deprive the State of the due exercise of its police power or to thwart its application of public policy." *Id.* at 418, 519 S.E.2d at 118. However, a governmental body cannot be estopped "by the unauthorized or erroneous conduct or statements of its officers or agents which have been relied on by a third party to his detriment." *S.C. Coastal Council v. Vogel,* 292 S.C. 449, 453, 357 S.E.2d 187, 189 (Ct.App.1987); *see McDaniel v. S.C. Dept. of Pub. Safety,* 325 S.C. 405, 411, 481 S.E.2d 155, 158 (Ct.App.1996) (probation officer's assurance could not bind the Department of Public Safety because he had no connection with the Department and no authority); *Daniels v. City of Goose Creek,* 314 S.C. 494, 499, 431 S.E.2d 256, 259 (Ct.App.1993) ("The acts of government agents acting within the scope of

their authority can give rise to estoppel against the government, but unauthorized conduct or statements do not."); *see also Heyward v. S.C. Tax Comm'n*, 240 S.C. 347, 352, 126 S.E.2d 15, 18 (1962) ("The question is not one of intention, but of power; and, if the officer has not power to act, his action is not state action, and so affords no basis upon which to predicate estoppel against the state." (quoting *Carolina Nat'l Bank v. State*, 60 S.C. 465, 473, 38 S.E. 629, 632 (1901))).[3]

## CONCLUSION

For the foregoing reasons, the decision of the trial court dismissing the indictment is reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

CONNOR and HUFF, JJ., concur.

---

3. The State also argues on appeal that the factual findings of the trial court are not supported by the record. However, in view of our conclusion that Hunter–Shaw and DHEC did not have authority to enter into a valid agreement barring prosecution of Peake, we need not consider this issue.