579 S.E.2d 297

**The STATE, Respondent,**

v.

**John PEAKE, Petitioner.**

No. 25614.

Supreme Court of South Carolina.

Heard Oct. 23, 2002.

Decided March 31, 2003.

Rehearing Denied April 23, 2003.

---

4. Because of our answer to the first certified question, we do not address the second question.

John David Hawkins, of Spartanburg, for Petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Norman Mark Rapoport, and Special Assistant Attorney General Alexander G. Shissias, all of Columbia, for Respondent.

Justice PLEICONES:

The circuit court granted petitioner's motion to quash an indictment charging petitioner with violating the Pollution Control Act (the Act)[1]. The State appealed, and the Court of Appeals reversed. *State v. Peake*, 345 S.C. 72, 545 S.E.2d 840 (Ct.App.2001). We granted certiorari, and affirm the decision reinstating the indictment.

## FACTS

Petitioner, a real estate developer, owned a private water treatment plant. The Department of Health and Environmental Control (DHEC) contacted petitioner in the summer of 1996 concerning the operation of this plant. In August 1996, petitioner and his attorney[2] met with DHEC representatives, including Ms. Hunter–Shaw,[3] in Columbia. As discussions

---

1. S.C.Code Ann. §§ 48–1–10 to –350 (1986 and Supp.2001).

2. Petitioner's current attorney did not participate in the negotiations.

3. We note that Ms. Hunter–Shaw is not an attorney.

continued during 1996, DHEC suggested petitioner pay a substantial monetary penalty for violating the Act.

Also in 1996, unbeknownst to petitioner, Ms. Hunter–Shaw referred the case to a DHEC committee that reviews matters and determines whether to refer the violations to the Attorney General for possible criminal prosecution. Ms. Hunter–Shaw never mentioned the potential criminal liability to petitioner, and neither he nor his attorney ever inquired. Both petitioner and his attorney testified at the hearing on petitioner's motion to quash the indictment that they had "assumed" a settlement would cover "everything." Ms. Hunter–Shaw testified at that hearing that she never discussed the possibility of criminal charges with petitioner or his attorney because, "I didn't want to put that at jeopardy, and it wouldn't—it simply wouldn't have come up." It is undisputed that Ms. Hunter–Shaw never affirmatively represented that the settlement covered criminal charges as well as civil liability issues.

Eventually DHEC and petitioner settled the civil matter by having petitioner deed the waste treatment plant to the Town of Ninety Six. No monetary penalty was exacted. Shortly thereafter, petitioner was indicted for violating S.C.Code Ann. §§ 48–1–90(a) and 48–1–320 of the Act.

## ISSUES

(1) Can DHEC settle criminal charges arising from alleged violations of the Act?

(2) Is "fundamental fairness" violated if the State is permitted to prosecute petitioner under the facts of this case?

## ANALYSIS

█ Petitioner first contends that the State was forbidden to criminally prosecute him because of Ms. Hunter–Shaw's actions. He relies on several theories to support this contention, including estoppel, apparent authority, and actual authority, all premised on the alleged "special nature" of the Act. We agree with the Court of Appeals that the circuit court erred in granting petitioner's motion to quash the indictment.

The declared purpose of the Act is "to maintain reasonable standards of purity of the air and water resources of the

State...." S.C.Code Ann. § 48–1–20 (1986). Further, "to secure these purposes and the enforcement of these provisions of this chapter [DHEC] shall have authority to abate, control, and prevent pollution." *Id.* The Act contemplates that persons or entities that violate the Act may be subject to both civil and criminal liability. *See* S.C.Code Ann. §§ 48–1–300; 48–1–320; and 48–1–330. A civil violation can result in the imposition of a **penalty** while a criminal violation may result in a **fine** and/or imprisonment. *Compare* § 48–1–320 (criminal) with § 48–1–330 (civil). The most critical statute provides:

§ 48–1–210. Duties of Attorney General and solicitors.

> The Attorney General shall be the legal advisor of the Department and shall upon request of the Department institute injunction proceedings or any other court action to accomplish the purpose of this chapter. In the prosecution of any criminal action by the Attorney General and in any proceeding before a grand jury in connection therewith the Attorney General may exercise all the powers and perform all the duties which the solicitor would otherwise be authorized or required to exercise or perform and in such a proceeding the solicitor shall exercise such powers and perform such duties as are requested of him by the Attorney General.

Petitioner contends this statute, read with the other provisions of the Act, vest prosecutorial authority in DHEC. Petitioner also relies on the fact that the attorney who would prosecute petitioner's criminal case is a DHEC employee, who has been appointed an acting Attorney General, rather than an Attorney General's employee. We disagree.

The first sentence of § 48–1–210 envisions that DHEC will be responsible for the administration and prosecution of civil matters and penalties, unless it requests the involvement of the Attorney General. *See also* S.C.Code Ann. § 48–1–50(7) (DHEC may "[s]ettle or comprise any action or cause of action for the recovery of a penalty or damages under this chapter ..."); § 48–1–50(11) (DHEC may "[a]dminister penalties...."). On the other hand, the second sentence of § 48–1–210 provides unequivocally that the Attorney General, or the solicitor acting pursuant to the Attorney General's instructions, will bring any criminal charges.

We agree with the Court of Appeals that § 48–1–220 could be read to affect this distribution of authority. This one sentence statute provides: "Prosecutions for the violation of a final determination or order shall be instituted only by [DHEC] or as otherwise provided for in this chapter." [4] Petitioner would read this statute to grant DHEC the authority to determine whether to pursue a criminal prosecution, while acknowledging the Attorney General's sole authority to control the process once the decision to prosecute is made. We agree with the Court of Appeals that reading the statute in this way would cause it to run afoul of S.C. Const. art. V, § 24. This constitutional provision vests sole discretion to prosecute criminal matters in the hands of the Attorney General. In *State v. Thrift*, 312 S.C. 282, 440 S.E.2d 341 (1994), this Court held that a statute purporting to require an executive agency to refer a case before a criminal violation could be prosecuted was violative of this provision. If § 48–1–220 were read to make DHEC the gatekeeper for criminal prosecutions arising under the Act, the statute would be unconstitutional.

The Court of Appeals properly construed § 48–1–220. It read the first clause of § 48–1–220 to give DHEC authority over civil prosecutions, and read the second clause, "or as otherwise provided for in this chapter," to refer to criminal prosecutions brought by the Attorney General pursuant to the second sentence of § 48–1–210. The decision whether to pursue criminal charges for an alleged violation of the Act is vested solely in the Attorney General. The corollary of this proposition is that the authority to grant immunity from criminal prosecution also resides exclusively in the Attorney General. *Cf., Ex parte Littlefield*, 343 S.C. 212, 540 S.E.2d 81 (2000) (prosecutor's discretion whether to try, to plea, or not to prosecute at all).

▆ Further, the fact that the Attorney General has the authority to "deputize" an attorney employed by a state agency to act as an Attorney General for purposes of prosecuting a criminal case does not convert Ms. Hunter–Shaw or

---

4. We note this statute does not apply to petitioner's situation since, according to the indictment, the criminal charges arise out of the violation of a permit and a statute, rather than from a violation of a "final determination or order."

DHEC itself into an Attorney General. As the Court of Appeals pointed out, the deputization here occurred after the civil settlement, and the DHEC attorney so deputized played no part in that settlement.

The Attorney General, not DHEC, determines whether to pursue criminal charges for a violation of the Act. To construe the Act in a manner that involves DHEC in the decision to initiate or pursue criminal charges would create a constitutional infirmity where none need exist. *E.g., Curtis v. State*, 345 S.C. 557, 549 S.E.2d 591 (2001) (statutes to be given a constitutional construction when possible).

■ Petitioner next argues that because he and his attorney "reasonably" assumed Ms. Hunter–Shaw to be settling both civil and criminal liability issues, she was possessed of either actual or apparent authority to do so. Alternatively, he contends that because of these reasonable beliefs, the State should be estopped to now pursue these criminal charges. The Court of Appeals consolidated these claims, and held that because Ms. Hunter–Shaw lacked actual authority to grant criminal immunity, the State could not be estopped. We agree. *E.g., Heyward v. South Carolina Tax Comm'n*, 240 S.C. 347, 352, 126 S.E.2d 15, 18 (1962) ("The question is not one of intention, but of power; and, if the officer has not power to act, his action is not state action, and so affords no basis upon which to predicate estoppel against the state").

The Court of Appeals properly held that the Act did not and could not authorize a DHEC employee to extend criminal immunity to petitioner.

■ Finally, petitioner argues that it is fundamentally unfair and a violation of his due process rights to allow the State to criminally prosecute him under these circumstances. He asserts a number of different bases for this proposition:

1) He was compelled to deed away his property with the false inducement that the whole matter would be resolved;

2) If and when he is tried, the fact that he deeded the plant makes him appear guilty; and

3) The same woman who falsely induced him to deed the property secretly reported him to the Attorney General for criminal prosecution.

It may well have been unfair of Ms. Hunter–Shaw not to reveal the fact that she had referred the matter for criminal consideration. We nevertheless do not find that her conduct rose to a level that would cause us to question the constitutionality of petitioner's criminal prosecution.

## CONCLUSION

The decision of the Court of Appeals reversing the circuit court order quashing the indictment is

**AFFIRMED.**

MOORE, J., concurs. BURNETT, J., concurring in a separate opinion in which TOAL, C.J., and WALLER, J., concur.

JUSTICE BURNETT CONCURRING:

While I agree with this Court's ultimate legal conclusion, I write separately to address the conduct of DHEC in this matter for fear that it is emblematic of the agency and the manner in which it manages our State's citizens.[1]

To demonstrate the impropriety of DHEC's actions a fuller recitation of the facts is necessary. Mr. Peake and his attorney met with DHEC officials, including Ms. Hunter–Shaw, in August of 1996, to discuss the operation of the private water treatment plant. At that time, Ms. Hunter–Shaw suggested Mr. Peake deed the sewer system to the Town of Ninety Six. Mr. Peake, on the advice of his attorney,

---

1. This case brings to mind these insights concerning governments. In moments of content we are apt to invoke Henry Clay's words that "Government is a trust, and the officers of the government are trustees; and both the trust and the trustees are created for the benefit of the people." John Bartlett, Henry Clay Speech at Ashland, KY, in March 1829, *Familiar Quotations*, (10th ed.1919), *available at* http://www.bartleby.com/100/ 348.2.html. Yet the facts of this case bring out the harsher inclination to exclaim "[t]he nine most terrifying words in the English language are, 'I'm from the government and I'm here to help.'" James B. Simpson, "President Ronald W. Reagan Press Conference on Aug. 12, 1986," *Simpson's Contemporary Quotations* (1988), *available at* http://www.bartleby.com/63/56/356.html.

initially declined to do so for two obvious reasons. First, deeding the sewer system would result in the loss of a $325,000 investment in the property. Second, Mr. Peake was concerned such a transfer could be considered as evidence of guilt in any subsequent criminal prosecution.

Ms. Hunter–Shaw did not inform Mr. Peake or his attorney that she had recommended investigation for possible criminal violations. At the time Ms. Hunter–Shaw sought to persuade Mr. Peake to deed the plant to the city, she began the process for Mr. Peake's subsequent indictment on criminal charges.

Despite several subsequent personal and telephone conferences, Ms. Hunter–Shaw never informed Mr. Peake's attorney that DHEC was recommending criminal prosecution because she "didn't think it was anything that he needed to know." Mr. Peake's attorney, now a Master–In–Equity in Spartanburg County, testified that he would not have advised his client to deed over the plant if the concern of criminal prosecution had not been resolved. Further, the attorney testified of his telephone conversations with Ms. Hunter–Shaw, which included repeated assurances that if Mr. Peake deeded the plant to the Town of Ninety Six then the "entire matter" would go away.

Of no solace to Mr. Peake is the observation that had the Attorney General's Office criminally charged him earlier than it had, or even if DHEC ever directly notified him they recommended he be criminally charged, this case would not have been resolved as it was. Mr. Peake under criminal indictment would be afforded substantial rights against what could only be deemed prosecutorial misconduct. In keeping the details of a criminal prosecution secret while maintaining the prospect of settlement which could "make the whole thing go away" DHEC sought to gain control of Mr. Peake's property while keeping alive the option of criminal prosecution.

To Mr. Peake the settlement offer by DHEC must be accepted to conclude civil and potential criminal proceedings. In exchange for surrendering the $325,000 investment in the property, Mr. Peake reasonably concluded the threats of prosecution by the State would be ended. Instead the "settlement" effected the surrender of the opportunity to obtain any return on his investment while still being held accountable for

possible criminal charges. The settlement was all the more troublesome because the act of surrendering the land could be viewed as an acknowledgement of guilt.

At best this case illustrates the problems which can occur when a governmental organization entrusts the enforcement of complicated statutes to those not trained to understand the import of telling a citizen "do this and all your trouble will go away."

At worst the facts here demonstrate a cultural environment at a State agency to abuse those the agency is entrusted to serve in order to obtain their idea of maximum results. It must be remembered, however, that government is not business and DHEC does not exist to defeat competitors. Instead, it is a State agency entrusted with the stewardship of the people's environment. This stewardship means they must not only zealously guard the environment, but must also be zealously on guard against a tendency to abuse its powers for what it considers to be the greater good.

Although the Attorney General retains prosecutorial authority, agency responsibilities must be completed with openness, candor and integrity. The matter was not something removed from Ms. Hunter–Shaw's control or on the periphery of her responsibilities. The decision to proceed criminally against Mr. Peake came directly from a referral by Ms. Hunter–Shaw. This calculated conduct may have allowed DHEC to effect transfer of the plant to a town and allow the State to seek a criminal indictment, but Mr. Peake was inequitably treated.

While Ms. Hunter–Shaw is not a prosecutor, she should be aware of the spirit and Rules of Professional Conduct governing prosecutors. *See* Rule 407, SCACR. Importantly, a prosecutor is charged with the responsibility of being "a minister of justice and not simply that of an advocate . . . . [t]his responsibility carries with it specific obligations to see that the defendant is accorded procedural justice." *Id.*, hist. n.

It is the rule of a prosecuting attorney, and those in government whose actions ultimately determine whether someone will be deprived of liberty or property, to:

> avoid the role of a partisan, eager to convict . . . [to] deal fairly with the accused as well as the other participants . . . .

to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

*State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977).

The United States Supreme Court in addressing the prosecutor's role provided a caution all government officials would do well to heed:

[He] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935).

Although this result will be of little assistance to Mr. Peake, perhaps State agency personnel will be constantly cognizant of the duty to, not only zealously fulfill their responsibility, but do so with equity and integrity.

TOAL, C.J., and WALLER, J., concur.