644 S.E.2d 36

**James CUSTODIO, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

No. 26296.

Supreme Court of South Carolina.

Submitted Feb. 14, 2007.

Decided March 26, 2007.

John D. Elliott, of Columbia, for petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Robert L. Brown, all of Columbia, for respondent.

Justice MOORE:

Petitioner was charged with numerous counts of burglary and grand larceny in connection with a string of at least seventy-five burglaries in Richland and Kershaw Counties.[1] He was identified as a suspect in the burglaries after an individual observed him throw a lockbox from the window of his car. The lockbox had been stolen from a home the same day. Petitioner pled guilty to three counts of second-degree burglary and two counts of grand larceny. He was sentenced to an aggregate term of forty-five years' imprisonment for the burglaries and concurrent five year terms for the grand larcenies. Defense counsel's motion to reconsider the sentence was denied. No direct appeal was filed. Subsequently, petitioner's application for post-conviction relief (PCR) was denied.

## FACTS

At the PCR hearing, petitioner testified he met with two members of the Richland County Sheriff's Department, and two assistant solicitors of the Richland County Solicitor's Office shortly after his arrest. Petitioner testified that, at the meeting, they offered petitioner a fifteen-year cap on the sentence if he would cooperate and tell them what burglaries he was involved in and help them retrieve stolen property and have it returned to the rightful owners. Petitioner stated that, after the meeting, he met with one of the assistant solicitors alone because he believed she would tell him the truth about the deal. Petitioner testified he asked her how much jail time he would receive if he accepted the deal, and was told it would be five to seven years. Petitioner testified he met with members of the Richland County Sheriff's Department the next day and told them he would accept the deal. That day, the officers drove petitioner around and he showed them twelve to fifteen homes he had burglarized or attempted to burglarize.

Petitioner testified he was worried the plea agreement was not in writing and, during the time he was cooperating, he asked police officers about providing him with a written

---

1. Petitioner waived venue and pled guilty to the Kershaw burglaries in Richland County.

agreement. Petitioner testified police told him the solicitor's office did not want to put the offer in writing. However, petitioner testified he felt he was already obligated to help them, and one of the officers told him a written agreement was "'just more of a technical thing. [The solicitor's office will] honor the deal as long as you'll do what you said you were going to do.'" During this time, petitioner was acting without benefit of counsel.

Petitioner testified that, after counsel was appointed, he told her about the agreement and that he wanted the State to honor the fifteen-year cap. Petitioner claimed he continuously requested that counsel attempt to enforce the original agreement, but she advised him he had no right to enforce it. Petitioner testified he did not know he was entitled to have his original plea agreement enforced, and, at the time of the plea, he did not realize the plea agreement was binding on the State. He testified he felt that if he did not plead guilty, then he was going to receive a life sentence. However, he stated he would not have pled had he realized he had a binding plea agreement. Petitioner testified he did not want a new trial, but rather, he wanted the deal the State had promised him.

Counsel testified she was not appointed until after petitioner had cooperated with the police and the solicitor's office. She testified she met with the two assistant solicitors, one of the investigators, and the sheriff, who all confirmed a meeting had occurred between petitioner, the sheriff's office, and the solicitor's office, wherein petitioner was told that, if he agreed to cooperate and return items he had stolen, "the charges would be limited to nonviolent burglary second charges, and there would be a cap of a fifteen-year sentence, and everything would run concurrent." Counsel testified that either immediately before or after she began representing petitioner, the Solicitor decided not to honor the agreement. She noted the Solicitor had not been at the meeting between petitioner and his two assistant solicitors.

Counsel further testified that, when petitioner pled guilty, she did not believe he had the ability to force the State to honor the original plea agreement. Counsel testified she was unaware of the existence of *Reed v. Becka*, 333 S.C. 676, 511 S.E.2d 396 (Ct.App.1999), when she represented petitioner.

She stated, at the time she represented petitioner, she believed the only remedy would be to vacate the plea and proceed to trial. She testified that, had she been aware of *Reed*, she would have raised it to the solicitor and the plea judge.

The PCR court ruled counsel was not deficient and that there was no agreement whereby petitioner would receive a cap of fifteen years in exchange for his cooperation. The PCR court found the record accurately reflected all plea negotiations, and petitioner had a full understanding of the consequences of his plea and the charges against him. The court further noted there was no testimony from the sheriff's office or the solicitor's office concerning this issue. Therefore, the PCR court denied relief.

## ISSUE

Did the PCR court err by finding defense counsel was not ineffective for failing to attempt to specifically enforce his plea agreement?

## DISCUSSION

■■■■ The burden is on the applicant in a post-conviction proceeding to prove the allegations in his application. *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813 (1985), *cert. denied*, 474 U.S. 1094, 106 S.Ct. 869, 88 L.Ed.2d 908 (1986). To establish a claim of ineffective assistance of counsel, a PCR applicant must prove: (1) that counsel failed to render reasonably effective assistance under prevailing professional norms; and (2) that the deficient performance prejudiced the applicant's case. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On review, a PCR judge's findings will be upheld if there is any evidence of probative value sufficient to support them. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989).

The State argues and the PCR court found that a plea agreement between petitioner and the solicitor's office did not exist. The PCR court's finding is without any evidence of probative value sufficient to support a finding that a plea agreement did not exist. *See Holland v. State*, 322 S.C. 111, 470 S.E.2d 378 (1996) (Court will not uphold PCR court's

findings when there is no probative evidence to support them). Both petitioner and his plea counsel testified regarding the existence of the agreement. Plea counsel specifically stated she met with the assistant solicitors and they confirmed that petitioner was told that if he agreed to cooperate and return items that he had stolen; there would be a fifteen-year cap on his sentence. The only evidence presented was that an agreement in fact existed. Therefore, the PCR court erred by finding a plea agreement did not exist. *Cf. Jackson v. State*, 342 S.C. 95, 535 S.E.2d 926 (2000) (where there is no evidence contradicting or conflicting with petitioner's testimony, PCR court erred by finding petitioner's testimony on the issue was not credible).

■ Petitioner argues that plea counsel was ineffective for failing to seek specific performance of the original plea agreement. Petitioner's argument is based on the Court of Appeals' decision in *Reed v. Becka*, 333 S.C. 676, 511 S.E.2d 396 (Ct.App.1999). In *Reed*, the solicitor made an oral offer, which Becka accepted, to allow Becka to plead to a lesser offense with a recommendation of probation. However, after the State consulted with the victim's family, the State withdrew the plea offer. The trial judge found the offer was a valid and enforceable contract and denied the State's motion to withdraw the offer. The Court of Appeals reversed.

The *Reed* court stated that a defendant does not have a constitutional right to plea bargain, a trial judge is not required to accept a plea bargain, and that ordinarily a plea offer is nothing more than an offer until it is accepted by the defendant by entering a court-approved plea of guilty. However, the *Reed* court found the general rule is subject to a detrimental reliance exception.

■ This exception is stated as: Absent an actual plea of guilty, a defendant may enforce an oral plea agreement only upon a showing of detrimental reliance on a prosecutorial promise in plea bargaining. *Reed*, 333 S.C. at 688, 511 S.E.2d at 402; *see also State v. Peake*, 345 S.C. 72, 545 S.E.2d 840 (Ct.App.2001) [2] (enforcement of an agreement not to prosecute is subject to two conditions: (1) the agent must be authorized

---

2. *Aff'd, State v. Peake*, 353 S.C. 499, 579 S.E.2d 297 (2003).

to make the promise; and (2) the defendant must rely to his detriment on the promise). Even if the agreement has not been finalized by the court, a defendant's detrimental reliance on a prosecutorial promise in plea bargaining may make a plea agreement binding.[3] *Reed,* 333 S.C. at 688, 511 S.E.2d at 402–403. For example, a defendant who provides beneficial information to law enforcement can be said to have relied to his detriment. *Id.* at 689, 511 S.E.2d at 403. The *Reed* court adopted the rule that the State may withdraw a plea bargain offer before a defendant pleads guilty, provided the defendant has not detrimentally relied on the offer.

█ The Court of Appeals properly adopted the detrimental reliance exception.[4] The State may withdraw from a plea bargain arrangement at any time prior to, but not after, the actual entry of the guilty plea by defendant or any other change of position by him constituting detrimental reliance upon the arrangement. Detrimental reliance may be demonstrated where the defendant performed some part of the bargain; for example, where the defendant provides beneficial information to law enforcement.

We find the exception applies to petitioner's situation. In reliance on an agreement offering him a fifteen-year cap,

---

3. In *State v. Thrift,* 312 S.C. 282, 440 S.E.2d 341 (1994), we held that all plea agreements must be on the record and must recite the scope, offenses, and individuals involved in the agreement. *Id.* Further, we noted that our review of a plea agreement is limited to those terms that are fully set forth in the record. *Id.* We concluded that neither the State nor the defendant will be able to enforce plea agreement terms which do not appear on the record before the trial judge who accepts the plea. *Id.; see also Sprouse v. State,* 355 S.C. 335, 585 S.E.2d 278 (2003) (review of an oral plea agreement is limited to terms set forth in the record). The *Thrift* decision, however, is not directly on point because, in the instant case, we have a plea agreement that was withdrawn by the solicitor. The fact the agreement was oral does not prevent the possible enforcement of the agreement.

4. *See* Annotation, *Right of Prosecutor to Withdraw from Plea Bargain Prior to Entry of Plea,* 16 A.L.R.4th 1089, § 3(a) (1982) (noting at least twenty-four states have adopted the detrimental reliance exception); 5 Wayne R. LaFave, et. al, *Criminal Procedure* § 21.2(f) (2d. ed.1999) (prevailing doctrine is that the State may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement).

petitioner fully cooperated with law enforcement by informing them of a multitude of burglaries he committed and assisting in the return of over a half million dollars in stolen property. Certainly, helping law enforcement solve several burglary crimes and assisting in the return of stolen property is beneficial information.[5] *See Reed, supra* (defendant who provides beneficial information to law enforcement can be said to have relied to his detriment). Petitioner relied on the plea offer to his detriment by taking the substantial step of cooperating with law enforcement, *i.e.* by performing some part of the bargain, before the Solicitor withdrew the plea offer.[6] Accordingly, petitioner could have enforced the oral plea agreement.

Petitioner claims counsel rendered ineffective assistance by not having his plea agreement enforced. To prove counsel ineffective when a guilty plea is challenged, petitioner must show that counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability a guilty plea would not have been entered. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Jordan v. State,* 297 S.C. 52, 374 S.E.2d 683 (1988). A defendant who pleads guilty upon the advice of counsel may attack the voluntary and intelligent character of the guilty plea only by showing the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *Carter v. State,* 329 S.C. 355, 495 S.E.2d 773 (1998).

Because petitioner could have enforced the plea agreement under the detrimental reliance exception and counsel failed to take this action, counsel failed to render reasonably effective assistance. Accordingly, counsel was ineffective in failing to have the plea agreement enforced based on the detrimental

---

5. *Cf. State v. Whipple,* 324 S.C. 43, 476 S.E.2d 683, *cert. denied* 519 U.S. 1045, 117 S.Ct. 618, 136 L.Ed.2d 541 (1996) (mere fact that a defendant chooses to reveal otherwise undiscoverable facts in the hope of securing a favorable plea agreement does not bind the State to accept the defendant's terms; a defendant may not attempt to create a firm commitment out of plea negotiations).

6. While the assistant solicitors were involved in offering the plea agreement to petitioner, the Solicitor was bound by that plea offer. *See Sprouse v. State,* 355 S.C. 335, 585 S.E.2d 278 (2003) (promise of one prosecutor in the office bound all prosecutors in the office).

reliance exception. *Cf. Jordan v. State,* 297 S.C. 52, 374 S.E.2d 683 (1988) (counsel's conduct fell below professional norms for not protecting Jordan's right to enforce the plea agreement, which had not been withdrawn, with the solicitor's office).

Further, counsel's defective performance prejudiced petitioner. Petitioner testified he felt as if he had to plead, even though the agreement had been withdrawn, because if he did not, then he would receive a life sentence if he went to trial. He stated he would not have pled had he realized he had a binding plea agreement. Accordingly, petitioner was prejudiced by counsel's failure to have the plea agreement enforced.

The appropriate remedy is the specific performance of the plea agreement. *See Sprouse v. State,* 355 S.C. 335, 585 S.E.2d 278 (2003) (specific performance of plea agreement is most efficient option because it eliminated need for new trial or plea hearings and granted parties nothing more and nothing less than the benefit for which they had bargained); *Jordan v. State, supra* (counsel ineffective for failing to withdraw guilty plea once prosecution reneged on plea bargain; remanded for either specific performance of the plea agreement and resentencing or for a new trial). Accordingly, on remand, the solicitor's office cannot assert anything other than the promised plea agreement of a fifteen-year cap on petitioner's sentence.

Because we reverse the PCR court and remand this case for proceedings consistent with this opinion, it is unnecessary to address petitioner's remaining argument. *See Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 428 S.E.2d 886 (1993) (appellate court need not address remaining issue when resolution of prior issue is dispositive).

**REVERSED AND REMANDED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.